UNITED STATES, Appellee

v

JAMES R. HOLCOMB, JR., Machinist's Mate
Second Class, U. S. Navy, Appellant

18 USCMA 202, 39 CMR 202

---

203

No. 21,288

March 21, 1969

Lieutenant *Stephen W. Grafman*, JAGC, USNR, argued the cause for Appellant, Accused. With him on the brief was Lieutenant *J. Arthur Bruno*, JAGC, USNR.

Lieutenant *Ray M. Druley*, JAGC, USNR, argued the cause for Appellee, United States. With him on the brief was Colonel *C. R. Larouche*, USMC.

## Opinion of the Court

QUINN, Chief Judge:

This case presents a different facet of the problem of admissibility in a court-martial of handwriting exemplars obtained from an accused by a civilian investigator, which we considered in United States v Penn, 18 USCMA 194, 39 CMR 194.

On March 2, 1967, several Government paychecks for enlisted persons were stolen from a desk in the office of the Master-at-Arms, Barracks 38, Long Beach, California. On the same day, the checks were cashed at the Security First National Bank, San Pedro, California, by a person identifying himself in the name of the accused. The accused had an account at the bank. His name and account number were endorsed on the back of each check. About six weeks later, the accused was called to the Legal Office at the Naval Station. There, he was questioned by Special Agent Milton G. Willhite of the Secret Service. Lieutenant (jg) Michael Grannis, the Disciplinary Officer at the Naval Station, was present; except for brief intervals he apparently remained for the entire interview. He acted as attesting witness to a certificate executed by Willhite reciting that he had advised the accused of the right to remain silent and the right to counsel.

At trial, Agent Willhite testified he had advised the accused of his "rights as required by law" by reading them from a Secret Service form titled "WARNING AND CONSENT TO SPEAK." The form was admitted as an exhibit. In part, it advises the in-dividual to be questioned that he has a right to counsel at the interview and informs him that if he "cannot afford a lawyer and want[s] one, a lawyer will be appointed for . . . [him] if and when . . . [he goes] to court or before a United States Commissioner." No reference was made in the form to any offenses, but Willhite testified he also "advised . . . [the accused] he was considered as a suspect in the forgery and negotiation of six U. S. Treasury checks." At Willhite's request, the accused composed two samples of his handwriting. Defense counsel objected to the admission in evidence of these writings on the ground the accused was not properly advised of his rights under Article 31, Uniform Code of Military Justice, 10 USC § 831. In support of the objection, the accused testified he did not recall that Agent Willhite ever told him he was suspected of forgery, but he admitted he was informed that Willhite possessed checks which had his "purported signature on them that were considered forgeries." The accused also admitted he "knew it was about stolen checks," and he acknowledged he signed a "CONSENT TO SPEAK" form in which he stated he did not want a lawyer. He further testified that, when asked by Willhite for samples of his handwriting, "I freely consented to give him exemplars of my hand-writing." The defense objection was overruled. Later, the law officer instructed the court members that unless they determined, beyond a reasonable doubt, that the exemplars were voluntarily provided by the accused, they were to dis-

204

regard them as evidence. The material parts of the instruction are as follows:

". . . In this connection there has been evidence that Mr. Willhite, the secret service agent, did not sufficiently inform the accused the nature of the accusation and of the offenses of which the accused was suspected. You are advised that these statements of the accused are not voluntary if you find that while the accused was suspected of the offenses that they were obtained from him through the interrogation or through the request of a person not subject to the Code, during an official military investigation, or while acting as an instrument of the military, who did not first inform the accused under the Article, Article 31 of the nature of the accusations; and advise him that he did not have to make any statement regarding the offenses of which he was accused or suspected, and that any statement made by him might be used as evidence against him in a trial by courts-martial. As I said previously, the burden of proof is upon the prosecution. Accordingly, you are advised that unless you find beyond a reasonable doubt that the accused was advised and understood the general nature of the offenses of which he was accused or suspected, and to which his out-of-court statements were directed, at the time he was questioned by the agent, you should find a failure to comply with article 31 and reject entirely the statements or exhibits obtained under such circumstances, giving them no weight whatever.

"In addition, in deciding on the voluntariness of these exhibits, he must also be advised that he has a right to remain silent, he has a right to consult a lawyer and to have a lawyer present with him at any interrogation, and that a lawyer will be appointed for him for that purpose prior to any interrogation if he so desires.

"Unless it is shown beyond a reasonable doubt that an accused who has been so advised of his rights knowingly, conscientiously and intelligently waived his right to remain silent, and his right to retain or have an appointed counsel, any statement thereafter obtained from the accused is involuntary and must be rejected by the court. And when I use the term 'statement,' gentlemen, this alludes to Prosecution Exhibit 19 and 20."

Although no objection to the instruction was interposed at trial, before the board of review the accused contended the instruction was erroneous in that it did not require the court members to find that Willhite's advice as to the right to counsel should have included a statement to the effect that, if the accused was unable to provide counsel of his own selection for the interview, the Government would appoint counsel for him free of charge. The accused's argument was predicated upon the idea that the preliminary advice required by Article 31 is comparable to the threshold advice which must be given to an accused in a custodial interrogation situation, as defined in Miranda v Arizona, 384 US 436, 16 L Ed 2d 694, 86 S Ct 1602 (1966), and United States v Tempia, 16 USCMA 629, 37 CMR 249. A divided board of review rejected the argument. In separate opinions, the majority held that the law officer's ruling was sustainable on either of two grounds: (1) That the court-martial complied with the instruction as given; or (2) that preliminary advice as to right to counsel was not required by law so the accused was not prejudiced by any alleged deficiency in the instruction or the evidence. The first certified question by the Judge Advocate General of the Navy asks whether the board of review was correct in this decision "in view of the instructions of the law officer regarding the voluntariness of handwriting exemplars."

Without retracing ground we covered in the *Penn* case, it is sufficient to note here that, as constitutional doctrine enunciated by the Supreme Court of the United States, exemplars of handwriting obtained from an accused at the request of a criminal investigator are admissible in evidence

against him, even though the accused was not first advised of his right to remain silent and his right to counsel, but, as a matter of military law, the procurement of exemplars in such circumstances is subject to the requirements of Article 31 of the Uniform Code, supra. A civilian investigator, such as Secret Service Agent Willhite, is not subject to the Code and, therefore, need not, normally, first advise an accused of his rights under Article 31 before requesting a sample of handwriting from him. As indicated in *Penn,* however, civilian and military investigations may be so conjoined as to make evidence obtained by a civilian investigator subject to the requirements of Article 31. Here, the interview took place on a military base, in the presence of a military officer, who directly participated in the proceeding, at least to the extent of acting as an attesting witness to the fact the accused was informed of certain rights. Since the law officer instructed on the question of Willhite's amenability to Article 31, obviously he construed the evidence as sufficient to raise that issue. The correctness of his conclusion has not been challenged at any stage of the proceedings by any of the parties, and the view we take of the matter makes it unnecessary for us to consider it. Cf. United States v Young, 10 USCMA 249, 27 CMR 323; United States v Plante, 13 USCMA 266, 32 CMR 266.

We assume for purposes of this appeal that the court-martial could properly find as a fact that Agent Willhite was subject to the provisions of Article 31 at the time he requested a handwriting exemplar from the accused. The assumption brings us directly to the nature of the advice he was required to give the accused under Article 31. In pertinent part, the Article provides as follows:

"(b) No person subject to this chapter may interrogate, or request any statement from, an accused or a person suspected of an offense without first informing him of the nature of the accusation and advising him that he does not have to make any statement regarding the offense

of which he is accused or suspected and that any statement made by him may be used as evidence against him in a trial by court-martial.

. . . . .

"(d) No statement obtained from any person in violation of this article, or through the use of coercion, unlawful influence, or unlawful inducement may be received in evidence against him in a trial by court-martial."

It is immediately apparent that Article 31 contemplates protection of the individual's right against self-incrimination. However, the history of the Article indicates it is not limited by the constitutional dimensions of the right to remain silent. We have pointed out that, in the context of military life, the Article has wider application than the constitutional prohibition against self-incrimination. Giving effect to the wider scope of the Article, we have required adherence to its precepts when request is made of an accused to compose, and turn over to the criminal investigator, a sample of his handwriting. United States v White, 17 USCMA 211, 38 CMR 9. At the same time, Article 31 does not decree advice as to the right to counsel, and it imposes no limitation upon the admissibility of evidence because the accused is not first informed of his right to consult counsel. We have held that an accused cannot be denied the right to consult counsel in connection with a police interrogation, and that a statement obtained from him in violation of this right is inadmissible in evidence. United States v Gunnels, 8 USCMA 130, 23 CMR 354. No violation of the provisions of Article 31 is involved in a case of that kind. Where there is compliance with Article 31, some evidence obtained from an accused is admissible, notwithstanding the accused was not first warned he has a right to consult counsel. United States v Rushing, 17 USCMA 298, 38 CMR 96; cf. United States v Tempia, supra. It follows, therefore, that even if Secret Service Agent Willhite was bound to comply with Article 31 when he requested handwriting exemplars from

the accused, he was not required to include in the threshold recital of rights an exposition of the accused's right to counsel. United States v Penn, supra; Gilbert v California, 388 US 263, 18 L Ed 2d 1178, 87 S Ct 1951 (1967).

When the record was before the board of review, one member indicated that in his opinion the law officer's instruction established the "law of the case"; and, as the evidence did not meet the prescribed standard, reversal of the findings of guilty was required. This view is now espoused by the accused. It is indeed true that a court-martial must take its law from the law officer and is bound by the instructions it receives in open court. United States v Rinehart, 8 USCMA 402, 24 CMR 212; United States v Crawford, 12 USCMA 203, 30 CMR 203. If the instructions require less than the law demands for a particular finding or sentence, the court-martial cannot go outside the instruction to find a greater offense or to impose a greater punishment than that covered by the instruction. United States v Rhoden, 1 USCMA 193, 200, 2 CMR 99. To that extent, it is appropriate to describe the instruction as establishing the "law of the case." See United States v Crawford, supra; United States v Powell, 12 USCMA 288, 30 CMR 288. The "law of the case," however, does not apply to an instruction that exceeds the requirements of the law.

An instruction that requires the court-martial to find more than the law requires imposes an unjustified burden upon the Government and constitutes an "advantage" to the accused. United States v Brown, 13 USCMA 485, 493, 33 CMR 17. As faulty as a gratuitous instruction may be when measured by the standard required by law in a case in which the subject matter of the instruction is in issue, the gratuitous instruction still gives the accused an advantage. However small the advantage may be, the accused cannot be prejudiced if the court-martial deliberates on matters which the law applicable to the case does not require it to deliberate on. As a result, a deficient, gratuitous instruction is not prejudicial to an accused. United States v Cadman, 10 USCMA 222, 27 CMR 296; United States v Duke, 16 USCMA 460, 37 CMR 80. As we pointed out in *Duke*, at page 465, an erroneous instruction on an unnecessary matter "does not impair the legal effect of proper findings of fact by the court-martial." By the same token, the absence of evidence in the record of trial to satisfy the terms of an unnecessary instruction does not impair findings of guilty determined upon the basis of proper essential instructions and supported by adequate evidence. United States v Regalado, 13 USCMA 480, 485, 33 CMR 12; United States v Dicario, 8 USCMA 353, 360, 24 CMR 163; United States v Seavey, 180 F2d 837 (CA3d Cir) (1950), certiorari denied, 339 US 979, 94 L Ed 1383, 70 S Ct 1023 (1950). As the Court of Appeals in *Seavey* said: "[A] defendant who has received more than he is entitled to is in no position to complain." *Id.*, at page 840. See also United States v Giordano, 15 USCMA 163, 169, 35 CMR 135. Accordingly, we answer in the affirmative the first certified question. Our answer also disposes of the issue upon which we granted the accused's petition for review.

The second matter presented by the Judge Advocate General's certificate deals with the sufficiency of the sentence instructions as measured by the standards prescribed in United States v Wheeler, 17 USCMA 274, 38 CMR 72. There, we held that instructions only as to the maximum permissible punishment and the voting procedure for determination of the sentence were prejudicially inadequate in light of the substantial evidence of mitigation. Among other things, the law officer in this case instructed the court members to consider "all the facts" in the case, including matters in "extenuation and mitigation." He referred specifically to such items as the accused's background, his character, and his record in the service "for good conduct and efficiency, or other traits which characterize a good sailor." In our opinion, these instructions sufficiently reminded

the court members of the relevant sentence evidence it should consider. That the court members responded to the instructions is apparent from the sentence they adjudged. The accused was subject to a dishonorable discharge and confinement at hard labor for thirty years; the court members imposed a sentence extending to a bad-conduct discharge and confinement at hard labor for one year. See United States v Mabry, 17 USCMA 285, 38 CMR 83. We, therefore, answer in the affirmative the second certified question which asks whether "the law officer's instructions on the sentence [were] adequate under U. S. v Wheeler," supra.

The decision of the board of review is affirmed.

Judges FERGUSON and DARDEN concur.