UNITED STATES, Appellee

v

JUNIUS B. PRESSEY, JR., Sergeant, U. S.
Air Force, Appellant

19 USCMA 360, 41 CMR 360

No. 22,456

April 3, 1970

*Major Frank T. Moniz* argued the cause for Appellant, Accused. With him on the brief was *Colonel Bertram Jacobson.*

*Major Donald B. Strickland* argued the cause for Appellee, United States. With him on the brief was *Colonel James M. Bumgarner.*

## Opinion of the Court

QUINN, Chief Judge:

A special court-martial, convened in the Republic of Vietnam, convicted the accused of assault with a deadly weapon upon Staff Sergeant Jack B. Ridley, in violation of Article 128, Uniform Code of Military Justice, 10 USC § 928, and sentenced him to a bad-conduct discharge, confinement at hard labor for six months, and accessory penalties. Intermediate appellate authorities have affirmed the conviction, and we granted review to consider the correctness of various instructions.

One of the instructions dealt with the right of self-defense. The Government contends the accused waived the alleged defect by withdrawing an objection to the instructions. See United States v Sanchez, 11 USCMA 216, 29 CMR 32 (1960). We need not, however, pass on the merits of this contention.

The Government also contends the record compellingly indicates that the accused struck Ridley in the head with an M-16 rifle, not because he was afraid of physical injury to himself, but because of an assumed insult. There is considerable evidence to that effect. The accused testified Ridley engaged him in conversation about a so-called "go to hell" hat, which was not authorized for wear in the area; Ridley "was saying things that were very provoking, using curse words," and these words "hurt . . . [the accused's] pride." He turned away but Ridley "grabbed . . . [him by the shoulder] and turned . . . [him] around." He removed Ridley's hands, but Ridley "grabbed" again at him, thereupon, he "came in a downward motion," hitting Ridley with his rifle with such force as to knock Ridley to the ground. To this point, the accused was confessedly not in fear of bodily harm, and he patently acted only to vindicate his hurt pride. What transpired afterward also com-pels the conclusion that the accused struck Ridley twice more with his rifle only because he resented Ridley's attitude toward him. Ridley testified he "lost conciousness." A defense witness testified that Ridley got up from the ground and "sort of staggered." He moved toward the accused with his hands at his sides, but with his fists clenched. The accused testified that as Ridley came up to him he said: "Sergeant Pressey, you better get me now." Whereupon, the accused "hit" him again with the rifle, and then "went back about another ten feet." A by-stander tried to take the weapon from the accused, but the accused pushed him aside as Ridley "kept coming." The accused "swung at . . . [Ridley] the third time." Consequently, if there was error in the instructions it was not prejudicial, because self-defense was not in issue. United States v Holcomb, 18 USCMA 202, 207, 39 CMR 202 (1969).

We reject the assignment of error for another reason. If we assume self-defense was raised by such conclusory assertions as the accused's statement that he "had to use self defense," we discern no error in the instructions.

As argued by defense counsel, the accused was entitled to defend himself when Ridley "grabbed him and turned him around." Ridley testified he had received a report from another sergeant about the accused's possession of the unauthorized headgear, and he talked to the accused about the matter. In the midst of the conversation, the accused "started to turn away," so he "placed . . . [his] hand on his shoulder." The accused "jerked away." Ridley saw him holding his rifle in a "high port position" and then "lost consciousness." The instructions on self-defense advised the court members that a person assaulted by another may stand his ground and "resist force with

force." The instructions further indicated that the extent of the force used may be measured by the "violence and the nature of the act of the alleged assailant." Thirteen factors were enumerated as matters the court members could consider in "evaluating the extent of the force used by the accused." These included the size and physical condition of the accused and Ridley and Ridley's action between the blows struck by the accused. They also included "the military relation of the parties and whether Sergeant Ridley was performing official duties at the time."

Appellate defense counsel contend that the reference to the military relationship of Ridley and the accused was prejudicially erroneous because the court members could conclude from it that a subordinate was obligated to use "less force" in repelling an assault by his superior than he might use in resisting an assault by a stranger. We agree with Government counsel, however, that the argument rests upon a "very strained interpretation" of the instructions.

The relationship between the parties in a physical encounter may properly be considered in determining ▪ whether the touching of the person of one by the other is with or without legal justification or excuse. In the absence of other evidence, one who touches another, who is a stranger to him, in a rude or angry manner, commits a battery. However, an existing relationship between parties who are angry at one another may justify a touching which would not be justified between strangers. See State v Hemphill, 162 NC 632, 78 SE 167 (1913). Ridley and the accused were not strangers. It was, therefore, appropriate for the court members to consider whether the immediate relationship between them imparted justification or excuse to Ridley's act in touch-ing the accused. In fact, the relevancy of the matter was acknowledged by defense counsel at trial when he asked the court members to consider whether Ridley acted "as a reasonable NCO would have acted under similar circumstances." We conclude, therefore, that, in light of the evidence, the instructional reference to the special and immediate relationship between the parties was not error.

Alleged deficiencies in the sentence instructions are the subject of the second assignment of error. The accused contends there was insufficient detail of the evidence of mitigation. United States v Wheeler, 17 USCMA 274, 38 CMR 72 (1967). In *Wheeler,* the instructions were limited to a statement of the maximum punishment that could be imposed and to delineation of the voting procedures to determine the sentence. These matters were covered in the challenged instructions, but there was also a great deal more. The instructions required the court members to consider "all matters in extenuation and mitigation," including the background and character of the accused and his military performance; they listed lesser punishments that the court members could impose within the framework of the maximum; and they cautioned the court members to give "full and free" discussion to what "constitutes a proper sentence," with each member exercising his "independent judgment." We are satisfied these additional instructions fleshed out the *Wheeler* skeleton to provide adequate guidelines for the court members' deliberations on the sentence. United States v Holcomb, supra, at page 207.

The decision of the board of review is affirmed.

Judges FERGUSON and DARDEN concur.