### UNITED STATES

v.

**Airman First Class, Daniel J. BLOUGH, United States Air Force.**

### ACM S30038.

U.S. Air Force Court of Criminal Appeals.

Sentence Adjudged 15 Aug. 2001.

Decided 28 June 2002.

Appellate Counsel for Appellant: Colonel Beverly B. Knott, Lieutenant Colonel Timothy W. Murphy, and Captain Patience E. Schermer.

Appellate Counsel for the United States: Colonel Anthony P. Dattilo, Lieutenant Colonel Lance B. Sigmon, and Major Jennifer R. Rider.

Before YOUNG, BRESLIN, and HEAD, Appellate Military Judges.

OPINION OF THE COURT

BRESLIN, Senior Judge:

The appellant was convicted, in accordance with his pleas, of one specification of disobeying a lawful order on divers occasions, in violation of Article 92, UCMJ, 10 U.S.C. § 892. He was also convicted, contrary to his pleas, of one specification of carnal knowledge on divers occasions, in violation of Article 120, UCMJ, 10 U.S.C. § 920, and one specification of wrongfully harboring a runaway knowing she was sought by law enforcement authorities, in violation of Article 134, UCMJ, 10 U.S.C. § 934. The sentence adjudged and approved was a bad-conduct discharge, hard labor without confinement for 30 days, restriction for 30 days, forfeiture of $650.00 pay per month for 1 month, and reduction to E–1.

The appellant now contends the military judge erred by refusing to instruct the members about specific evidentiary matters the members should have considered during deliberations on sentence, to the prejudice of appellant. He also contends the military judge committed plain error by failing to instruct the members, sua sponte, that the appellant's guilty plea could be considered as a matter in mitigation. We find no error that materially affects the appellant's substantial rights, and affirm.

At the time relevant to this case, the appellant was 19 years old, and relatively new to the Air Force. He was assigned as an aircraft crew chief, and stationed at Grand Forks Air Force Base, North Dakota. In about May 2000, he met the victim, a female then 15 years old. Shortly thereafter, she spent the weekend with the appellant in his dormitory room, where they engaged in sexual intercourse. The victim's parents learned of this, and complained to Air Force officials. The appellant's superintendent gave him an order, orally and in writing, to stay away from this 15 year-old girl.

The appellant left Grand Forks AFB on temporary duty for a month; upon his return he made arrangements to meet the victim again. They began a romantic relationship, including sexual intercourse. The appellant even drove the victim to a clinic to obtain

birth control pills. The appellant continued the relationship, notwithstanding his friends' repeated warnings that what he was doing was wrong and could have serious consequences.

On 9 April 2001, after an argument with her stepfather, the victim called the appellant and asked him to pick her up from school. The appellant took her to his off-base apartment, and let her stay there for several days instead of going home. Both the victim's mother and the local police contacted the appellant while looking for the victim, but he lied to them, saying he did not know where she was. After about two weeks, the police issued a news release listing the victim as a missing person. Upon learning of the publicity, the victim returned home. Agents from the Air Force Office of Special Investigations (AFOSI) interviewed the appellant, who confessed.

At trial, the appellant entered a provident guilty plea to disobeying a lawful order to stay away from the victim. He pled not guilty to the charges of carnal knowledge and harboring a runaway. The prosecution called numerous witnesses to prove the later offenses. The appellant testified under oath and admitted that he had sexual intercourse with the victim knowing that she was only 15 years old, and that he harbored her knowing she was sought by law enforcement. Not surprisingly, the court members found the appellant guilty of the charged offenses.

### *Wheeler* Instruction

During the sentencing proceedings, the defense presented evidence of the appellant's background, character, duty performance, and other matters in extenuation and mitigation. Citing *United States v. Wheeler*, 38 C.M.R. 72, 1967 WL 4375 (C.M.A.1967), trial defense counsel asked the military judge to instruct the members in detail of specific evidentiary matters the members could consider during the sentencing deliberations, including the appellant's age, his performance report, lack of previous convictions or nonjudicial punishment, the appellant's character as reflected in Defense Exhibits A through O and in the testimony of a defense witness, and the appellant's expressed desire to remain in the Air Force. The military judge

declined, indicating his intention to instruct in the manner described in *United States v. Hopkins*, 55 M.J. 546, 550 (A.F.Ct.Crim.App. 2001), *aff'd*, 56 M.J. 393 (2002). The military judge indicated that he would leave it up to defense counsel to argue what he believed were matters in extenuation and mitigation. Thereafter, the military judge instructed the members:

> In determining a sentence, you should consider all the facts and circumstances of the offenses of which the accused has been convicted and all matters concerning the accused whether presented before or after the findings. Thus, you should consider the accused's background, his character, all matters in extenuation and mitigation, and any other evidence that he presented. In this phase of the trial you may consider all of the evidence presented including the nature of the relationship. As you recall, during the findings phase I restricted the manner in which you could consider the nature of the relationship. In this phase you can consider the nature of the relationship in any manner you deem appropriate. You should also consider any matters in aggravation.

The appellant did not request an instruction that a guilty plea is a matter in mitigation, and the military judge did not provide the instruction sua sponte. At the conclusion of the instruction, both counsel indicated they had no objection to the instructions given, or any request for further instruction. During his argument on sentencing, trial defense counsel stressed the appellant's age, his character and duty performance as reflected by the character statements, his desire to remain in the Air Force, the adverse consequences of the conviction (including the possibility that he would have to register as a sex offender), the possible effects of a bad conduct discharge, and the appellant's voluntary assistance to the AFOSI.

The appellant now argues that the military judge committed prejudicial error in refusing the defense-requested instruction detailing the evidence to be considered in extenuation and mitigation. The appellant maintains that the decision of our superior court in *Wheeler*, 38 C.M.R. at 75, requires the military judge

to "tailor his instructions on the sentence to the law and the evidence," and that the military judge's refusal to do so was error. The government contends that the military judge's instructions were sufficient under both *Wheeler* and Rule for Courts–Martial (R.C.M.) 1005(e)(5).

In analyzing this issue, it is helpful to study *Wheeler* closely, and to review the history and development of the law relating to sentencing instructions regarding the court member's consideration of extenuating and mitigating factors. Congress enacted the Uniform Code of Military Justice in 1950. Article 36, UCMJ, 10 U.S.C. § 836, delegated to the President the authority to prescribe uniform procedural rules for courts-martial. In 1951, pursuant to that delegation, the President promulgated the *Manual for Courts–Martial, United States (MCM)*. Paragraph *76b* of the 1951 *Manual* set out the procedure to be used during the sentencing portion of the trial. The rule required only one instruction to the members, and then only in general courts-martial.

> *b. Procedure.*—(1) *Advice as to maximum punishment.*—Before a general court-martial closes to deliberate and vote on the sentence, the law officer may advise it of the maximum punishment, which may be adjudged for each of the offenses of which the accused has been found guilty. If a special court-martial has any question as to the maximum punishment it may adjudge in a particular case, it may request the trial counsel to procure and present this information to the court. Such advice and information will be given in open court in the presence of the accused and counsel for both sides and shall be made a matter of record.

The *Manual* then went on to detail the procedures for deliberation and voting. *MCM,* ¶ *76b* (2) and (3)(1951 ed.). *See also MCM,* ¶ 39b (1951 ed.) (duty of law officer during sentencing is to instruct on the maximum sentence); *MCM,* A8a (1951 ed.) (Guide to trial procedure permitted the legal officer to instruct the members on the maximum punishment). Following the guidance of the *Manual* at the time, the presiding law officers in general courts-martial would instruct

the members only upon the maximum possible punishment. Perhaps it was thought that there was little need for further instruction, because the court members were provided copies of the *Manual* for their use during the trial. *United States v. Gilbertson,* 4 C.M.R. 57, 60, 1952 WL 2686 (C.M.A.1952). *See generally United States v. Miller,* 56 M.J. 764, 766–68 (A.F.Ct.Crim.App.2002).

In a series of decisions, our superior court reshaped sentencing proceedings in courts-martial. *See United States v. Neal,* 38 C.M.R. 161, 1968 WL 5358 (C.M.A.1968) (law officer required to have a pre-argument conference on instructions); *United States v. Mamaluy,* 27 C.M.R. 176, 181, 1959 WL 3587 (C.M.A.1959) (instructional pattern of *MCM,* ¶ 76 (1951 ed.), improper); *United States v. Turner,* 25 C.M.R. 386, 391, 1958 WL 3178 (C.M.A.1958) (law officer *must* inform the members of the maximum authorized punishment prior to deliberations); *United States v. Rinehart,* 24 C.M.R. 212, 1957 WL 4746 (C.M.A.1957) (court members may not refer to the *Manual for Courts–Martial* while performing their duties); *United States v. Boswell,* 23 C.M.R. 369, 1957 WL 4499 (C.M.A. 1957) (court members should not refer to outside sources); *United States v. Cothern,* 23 C.M.R. 382, 384, 1957 WL 4501 (C.M.A. 1957) ("Where the Manual conflicts with the Code or the law, as interpreted by this Court, it must give way.").

The Court's review of sentencing procedures also focused on sentencing instructions concerning matters presented in extenuation and mitigation. In *United States v. Rake,* 28 C.M.R. 383, 1960 WL 4441 (C.M.A.1960), the Court discussed the level of detail required for the sentencing instructions.

> [I]t is appropriate for the law officer to provide "general guides governing the matters to be considered in determining the appropriateness of the particular sentence." *United States v. Mamaluy,* 10 USCMA 102, 106, 27 CMR 176, 1959 WL 3587 [ (1959) ]. *However, he is not required to detail each and every matter that the court-martial might possibly consider in mitigation.* As we pointed out in *United States v. Harris,* 6 USCMA 736, 21 CMR 58[, 65–66, 1956 WL 4551 (1956)], in

connection with the recital of the evidence before findings, "the emphasizing of particular facts by special instructions will often mislead a jury as to their relative importance." The matter is one which rests in the sound discretion of the law officer. *Rake*, 28 C.M.R. at 384 (emphasis added). *See generally Perovich v. United States*, 205 U.S. 86, 92, 27 S.Ct. 456, 51 L.Ed. 722 (1907) ("Singling out a single matter and emphasizing it by special instruction as often tends to mislead as to guide a jury.").

Subsequently, in *Wheeler*, 38 C.M.R. at 75, the (then) Court of Military Appeals considered the case of a private who had been sentenced to a bad-conduct discharge, confinement for one year, and forfeiture of all pay and allowances for being absent without authority for 17 weeks. The court was obviously disturbed by the perceived severity of the sentence for this soldier with 18 years' service, which included many excellent ratings and the award of the Purple Heart medal, and paid scant attention to the fact that he had two prior court-martial convictions, each for two separate unauthorized absences. The *Wheeler* court cited *Rake* with approval, and held that the law officer was required "to delineate the matters which the court-martial should consider in its deliberations" on sentencing, so that he should "tailor his instructions on the sentence to the law and the evidence, just as in the case of his prefindings advice." *Wheeler*, 38 C.M.R. at 75. The *Wheeler* court noted that the law officer is given discretion in shaping the instructions to the evidence, and went on to explain the level of detail expected in such instructions.

> [W]e urge law officers carefully to shape their instructions on the sentence to the evidence presented and to inform the court members fully as to their responsibilities. The Army has long provided suggested instructions fulfilling the latter function. See Appendices XXXII, XXXIII, Department of the Army Pamphlet No. 27–9, Military Justice Handbook: The Law Officer, April 1958, paragraph 89. Indeed those instructions would have been peculiarly appropriate here, for they refer to the need to consider "the background and

character of the accused; . . . the . . . record of the accused in the service for good conduct . . . [and] other traits which characterize a good soldier;" the plea of guilty; and other matters which the court should consider. In addition, they place emphasis on its sole responsibility to select an appropriate sentence within the limits prescribed by law. *Id.*, Appendix XXXIII.

*Wheeler*, 38 C.M.R. at 76.

Later cases refined the *Wheeler* guidance. In *United States v. Holcomb*, 39 C.M.R. 202, 1969 WL 5950 (C.M.A.1969), the Court considered the appropriateness of sentencing instructions that the members should consider "all the facts" in the case, including matters in "extenuation and mitigation," such as the accused's background, his character, and his record in the service "for good conduct and efficiency, or other traits which characterize a good sailor." *Holcomb*, 39 C.M.R. at 207. The Court held that the instructions sufficiently reminded the court members of the relevant sentencing evidence it should consider. *Id.* at 207–08. In a subsequent case, the Court considered the propriety of giving an instruction in sentencing that did not correspond to evidence presented at trial. In *United States v. Tackett*, 41 C.M.R. 85, 87, 1969 WL 6293 (C.M.A.1969), the Court held that where there is no evidence of good conduct, valor, or other favorable traits of an accused, the judge should not instruct on these matters, because such a reference would emphasize their obvious absence.

The *Manual for Courts–Martial* was substantially revised in 1969, and through later amendments. Paragraph 76 was amended to incorporate the numerous decisions of our superior court. The new rule provided that the military judge *must* give appropriate instructions on the punishment, to include a statement of the maximum authorized punishment and instructions on the voting procedures.

> The instructions should be tailored to the facts and circumstances of the individual case and should fully inform the members of the court-martial on their sole responsibility for selecting an appropriate sentence and that the court-martial may consider all matters in extenuation and mitigation, as

well as those in aggravation, whether introduced before or after findings; evidence admitted as to the background and character of the accused; and the reputation or record of the accused in the service for good conduct, efficiency, fidelity, courage, bravery, or other traits of good character. *MCM,* ¶ 76b(1) (1969 ed.).

The *Manual* was substantially revised in 1984, and Paragraph 76b was rewritten as Rule for Courts–Martial (R.C.M.) 1005. The new version of the rule enumerated certain required instructions during sentencing, including, "[a] statement that the members should consider all matters in extenuation, mitigation, and aggravation, whether introduced before or after findings, and matters introduced under R.C.M. 1001(b)(1), (2), (3) and (5)." R.C.M. 1005(e)(4). The same language is now included in R.C.M. 1005(e)(5), in the 2000 edition of the *Manual.* The language is consistent with *Wheeler* and *Holcomb,* and certainly within the authority of the President to make procedural rules, as delegated by Congress in Article 36, UCMJ.

Our superior court has continued to apply *Wheeler,* requiring the military judge to give general guidance to the court members on matters to be considered during sentencing, but allowing the military judge some discretion in tailoring the instructions. *United States v. Hopkins,* 56 M.J. 393 (2002) (within the military judge's discretion to address the accused's expression of remorse by instructing the members that they should consider the accused's unsworn statement); *United States v. Davidson,* 14 M.J. 81, 85 (C.M.A. 1982) (error not to instruct members to consider pretrial confinement during sentencing); *United States v. Slaton,* 6 M.J. 254, 255 (C.M.A.1979) (military judge required to instruct members where the accused's mental capabilities were in issue).

■ In sum, R.C.M. 1005(e)(5), *Wheeler,* and its progeny require that the military judge give general guidelines to the court members about the matters they should consider in sentencing. The "tailoring" envisioned by *Wheeler* is in selecting the general categories of mitigating or extenuating evidence which are appropriate for instruction, such as evidence of good character, a good

service record, pretrial restraint, or mental impairment. However, it is not necessary to detail each piece of evidence that may demonstrate such matters, although a military judge certainly has the discretion to do so.

■ Turning to this case, we find the military judge's instructions were sufficient to provide the members general guidance on matters they should consider in sentencing. The military judge informed the members that they should consider the appellant's character; it was not necessary that the military judge specifically tie that instruction to the character statements contained in Defense Exhibits A through O. *Rake,* 28 C.M.R. at 384. The military judge also instructed the members that they should consider "all matters in extenuation and mitigation," and all the other evidence presented by the defense. This instruction, while broad, included all matters raised by the defense. *Holcomb,* 39 C.M.R. at 207. The military judge specifically tailored the instruction to advise the members that the willingness of the victim to engage in the prohibited conduct was a factor that should be considered in sentencing. The military judge did not instruct on the appellant's lack of previous convictions or punishment under Article 15, UCMJ, 10 U.S.C. § 815; however, we note the defense did not offer any evidence to this effect. *United States v. Pagel,* 40 M.J. 771, 780 (A.F.C.M.R.1994). These instructions, taken together, were sufficient to inform the members of their responsibilities during sentencing deliberations.

### Failure to Instruct Sua Sponte
### Re: Guilty Plea

■ As noted above, the appellant entered mixed pleas, but was convicted of all charges and specifications. Trial defense counsel did not request an instruction to the effect that the appellant's partial plea was a matter that should be considered in extenuation and mitigation. The military judge did not so instruct, and trial defense counsel raised no objection on that ground. Now the appellant claims the military judge committed plain error by failing to instruct sua sponte that the members should consider the appellant's

partial guilty plea during sentencing deliberations.

Military case law holds that a military judge should instruct that a guilty plea is a matter in mitigation if requested, but that it is not error to instruct absent a request. This has not always been so, however. In *Rake*, 28 C.M.R. at 384–85, our superior court discussed whether it was error to refuse to instruct that a plea of guilty is a matter in mitigation.

> Commonly, some consideration is given an accused merely because he pleads guilty. *See* Newman, *Pleading Guilty for Considerations: A Study of Bargain Justice*, 46 Journal of Criminal Law 780 (1956). As a result, an instruction to the effect that the accused's plea of guilty may be regarded a mitigating circumstance is not inappropriate. *United States v. Friborg*, 8 USCMA 515, 25 CMR 19, 1957 WL 4638 [ (1957) ]; *United States v. Mamaluy*, [27 CMR 176, 1959 WL 3587 (1959) ]. Whether such instruction must be given, however, is another question. More than that, it is doubtful indeed that a plea of guilty is a step toward rehabilitation. The incidence of recidivism is too high to regard the plea as an accurate gauge of an affirmative indication of rehabilitation. *See* Newman, supra. Thus, the law officer was entirely correct in rejecting the latter part of the requested instruction.

*Rake*, 28 C.M.R. at 384–85. *But see Wheeler*, 38 C.M.R. at 76.

In *United States v. Prater*, 43 C.M.R. 179, 1971 WL 12753 (C.M.A.1971), the Court considered a case that is the opposite of the issue addressed herein. There, the appellant pled guilty to two of four charges, and the military judge gave the members the standard instruction that a guilty plea is a matter in mitigation. On appeal, the accused argued that the instruction was likely to cause the members to consider his not guilty pleas as matters in aggravation. Finding no error, the Court reasoned, "[T]he juxtaposition of the guilty and not guilty pleas was as likely to benefit the accused as it was to harm him." *Prater*, 43 C.M.R. at 181. The court wisely noted that, "[I]f the instruction that a guilty plea is a mitigating circumstance had

not been given, failure to do so would have been assigned as error." *Id.*

Later case law recognizes that a guilty plea is ordinarily a matter that should be considered during sentencing deliberations. *Hopkins*, 55 M.J. at 550; *McLeskey*, 15 M.J. at 565, 566 (A.F.C.M.R.1982) (error to refuse requested instruction). However, it is not a required instruction under R.C.M. 1005(e).

Trial defense counsel made no request for instruction on the appellant's guilty plea, and did not object to the military judge's instruction at trial. Failure to object waives any claim or error, absent plain error. R.C.M. 920(f); *United States v. Maxwell*, 45 M.J. 406, 426 (1996). "In the absence of a defense objection or request to so instruct, however, the failure of the military judge to give such an instruction does not constitute reversible error." *United States v. Fisher*, 21 M.J. 327, 328 (C.M.A.1986). *See generally Henderson v. Kibbe*, 431 U.S. 145, 154, 97 S.Ct. 1730, 52 L.Ed.2d 203 (1977) ("It is the rare case in which an improper instruction will justify reversal of a criminal conviction when no objection has been made in the trial court.").

In this case, the appellant's failure to request an instruction on the appellant's guilty plea, and failure to object to the instructions as given, waived any claim of error. We do not mean to suggest any lapse on the part of trial defense counsel. It is likely he intentionally omitted a request for that instruction, for fear that it would draw adverse attention to the appellant's not guilty pleas to the offenses of which he was ultimately convicted. Under the circumstances of this case, we find no plain error.

Even if the sentencing instructions were erroneous, we will not grant relief absent a showing of material prejudice to a substantial right. Article 59a, UCMJ, 10 U.S.C. § 859a; *United States v. Mabry*, 38 C.M.R. 83, 84, 1967 WL 4378 (C.M.A.1967); *Wheeler*, 38 C.M.R. at 76; *Pagel*, 40 M.J. at 780. In assessing prejudice, reviewing courts look at the nature and extent of the mitigating and extenuating evidence, and the severity of the sentence imposed. *United States v. DeShazo*, 38 C.M.R. 270, 271, 1968 WL 5387 (C.M.A.1968); *Mabry*, 38 C.M.R. at 84.

Here, the main thrust of the appellant's sentencing case was that he was genuinely in love with the victim, and that his transgressions arose out of their mutual affection. The military judge tailored his instructions to inform the members that they could take this into consideration. The military judge instructed the members that they should consider "all the evidence presented by the defense," and the defense counsel ably argued the significance of the mitigating and extenuating circumstances. The maximum punishment was the limit of the jurisdiction of a special court-martial; however, the court members imposed only a bad-conduct discharge, hard labor without confinement for 30 days, restriction to limits for 30 days, forfeiture of $650.00 pay per month for 1 month, and reduction to E–1. Under the circumstances, we are convinced that, if there was any error, it was harmless.

The approved findings and sentence are correct in law and fact, and no error prejudicial to the substantial rights of the appellant occurred. Article 66(c), UCMJ, 10 U.S.C. § 866(c); *United States v. Turner*, 25 M.J. 324, 325 (C.M.A.1987). Accordingly, the approved findings and sentence are

AFFIRMED.