# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

## UNITED STATES

**v.**

## Technical Sergeant JONATHAN D. WILLIAMS
## United States Air Force

## ACM 38255

## 9 July 2014

Sentence adjudged 12 October 2012 by GCM convened at Incirlik Air Base, Turkey. Military Judge: Jefferson Brown.

Approved Sentence: Confinement for 30 months, reduction to E-4, and a reprimand.

Appellate Counsel for the Appellant: Major Nicholas D. Carter and Major Matthew T. King.

Appellate Counsel for the United States: Colonel Don M. Christensen; Lieutenant Colonel C. Taylor Smith; Lieutenant Colonel Nurit Anderson; Major John M. Simms; Captain Thomas J. Alford; Captain Richard J. Schrider; and Gerald R. Bruce, Esquire.

Before

ALLRED, MITCHELL, and HECKER
Appellate Military Judges

OPINION OF THE COURT

This opinion is subject to editorial correction before final release.

HECKER, Senior Judge:

A general court-martial composed of officer and enlisted members convicted the appellant, contrary to his pleas, of attempting to persuade, induce, or entice an individual under the age of 16 years to engage in sexual activity; attempting to communicate indecent language verbally and in writing to a child under the age of 16 years; and possessing and transporting child pornography, in violation of Articles 80 and 134,

UCMJ, 10 U.S.C. §§ 880, 934.[1]  The court-martial sentenced him to confinement for 30 months, reduction to E-4, and a reprimand.  The convening authority approved the sentence as adjudged.

On appeal, the appellant raises five issues:  (1) the evidence is factually and legally insufficient to sustain his convictions for possessing and transporting child pornography;  (2) the military judge abused his discretion in denying a defense challenge for cause against a panel member;  (3) the appellant was denied effective assistance of counsel when his civilian counsel slept during substantial portions of his court-martial;  (4) the military judge erred by instructing the panel that sex offender registration was a collateral consequence; and (5) trial counsel committed prejudicial misconduct during the sentencing argument.[2]  Finding no error that materially prejudices a substantial right of the appellant, we affirm the findings and sentence.

*Background*

Periodically between 2008 and June 2011, the appellant engaged in sexually-oriented conversations online with a civilian law enforcement officer purporting to be a 14-year-old girl named "Amanda."  During those online conversations, the appellant repeatedly talked about the sexual activities he wanted to engage in with Amanda.  For this misconduct, the appellant was convicted of attempting to persuade, induce, or entice a child under the age of 16 years to engage in sexual activity and attempting to communicate indecent language in writing to a child.  On one occasion, the appellant made similar comments over the telephone to a female detective posing as Amanda, resulting in his conviction for attempting to verbally communicate indecent language to a child.

In 2009, the appellant arranged to meet Amanda in Arkansas to engage in sexual activity.  This meeting never occurred, but the appellant renewed that plan in June 2011.  After he arrived at the meeting place, he was arrested by civilian law enforcement.  Officers found condoms and a camera in his car, along with a laptop and an external hard drive.  Forensic testing of the laptop and hard drive found multiple visual depictions of child pornography, and the appellant was subsequently convicted of possessing such material and transporting it across state lines.

*Factual and Legal Sufficiency*

Both offenses involving child pornography required a showing that the appellant "knowingly and wrongfully" possessed and/or transported visual depictions of minors

---

[1]  A second specification of attempting to persuade, induce, or entice an individual under the age of 16 years to engage in sexual activity did not go before the panel because the military judge found it was not investigated as required by Rule for Courts-Martial 405 and therefore was not properly referred to the court-martial.

[2]  The fifth issue is raised by the appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

engaged in sexually explicit conduct. *See Manual for Courts-Martial* (*MCM*), Part IV, ¶ 68b.b. (2012 ed.). The appellant contends the evidence is factually and legally insufficient to sustain those convictions because the evidence does not establish that he knew of the presence of the images on his computer media.

We review issues of factual and legal sufficiency de novo. Article 66(c), UCMJ, 10 U.S.C. § 866(c); *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002).

The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we are] convinced of the accused's guilt beyond a reasonable doubt." *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987). In conducting this unique appellate role, we take "a fresh, impartial look at the evidence," applying "neither a presumption of innocence nor a presumption of guilt" to "make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt." *Washington*, 57 M.J. at 399.

"The test for legal sufficiency of the evidence is whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt." *United States v. Humpherys*, 57 M.J. 83, 94 (C.A.A.F. 2002) (citations and internal quotation marks omitted). "[I]n resolving questions of legal sufficiency, we are bound to draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001) (citations omitted).

After the appellant drove away from the convenience store where he had arranged to meet Amanda, he was arrested by civilian police and advised that he was suspected of engaging in "internet stalking of a child." After being read his rights, the appellant agreed to be interviewed. When the detective asked the appellant if any "child pornography" would be found on his computer equipment, the appellant asked for clarification on "what age groups" would meet that definition. He then admitted "a handful" of such images might be found on his computer. Later in the interview, the appellant admitted investigators would find 25–50 such images on his computer and advised the detective where those images had been saved. He also explained he considered "child pornography" to be images of "little kids," not teenage girls and that he came into possession of the images through chat sessions.

When he testified at his court-martial, the appellant denied ever searching for, knowingly possessing, or downloading child pornography. He also denied having ever seen the material found on his computer. He did admit to receiving images of children engaging in sexual activity while he was trying to download adult pornography but testified he would then delete the materials.

A forensic analysis was conducted of the appellant's computer and hard drive by an analyst from the Defense Computer Forensics Laboratory. The analyst performed a "key word search" for the phrase "PTHC" (which stands for "preteen hard core") and found over 1,200 references to that phrase within the laptop's computer file system. He also found evidence of the appellant's online chat with the detective on 10 June 2011 as he was traveling to meet "Amanda" in Arkansas. Most of his analysis focused on three video recordings and four thumbnail images identified by the detective during his review of an identical copy of the appellant's computer media.

The three video recordings showed young female children engaging in sexual intercourse and oral sodomy with adult men. All three were found on the appellant's laptop computer in a user-created folder with a file path name similar to that provided by the appellant during his interview. The recordings were also found in other locations on the computer, both as zipped (compressed) and unzipped files, meaning the computer user had taken an action to unzip the files. For one of the recordings, the analyst also found several thumbnail images containing one frame of the recording, which meant the recording had been stored on the computer at some point in a "thumbnail view" mode.

The analyst also examined four thumbnail images on the appellant's external hard drive. Three of these images were located in folders with names indicating they had been downloaded from a peer sharing network. All four images depict young female children engaging in sexually explicit activity. The pictures that corresponded to these thumbnail images were not found on the appellant's computer.

After reviewing information found on the computer, the analyst concluded the computer was purchased new sometime before 6 June 2011. Based on the profile created on the laptop under the appellant's name, someone logged on for the first time on 6 June 2011 and transferred a large block of files onto it from another computer named "Jon's home PC," including the video recordings at issue in this case, and then moved the folders into the new computer's file structure.

Under cross-examination, the analyst testified he found no indication that any of the video recordings had been opened or viewed between their placement on the laptop on 6 June 2011 and the seizure of the laptop by police on 10 June 2011. He also testified there was no way to know if the files were accessed on "Jon's home PC" prior to their transfer to the laptop because that computer was not available for analysis.

As he did at trial, the appellant seizes on this testimony to argue he cannot be convicted of wrongfully possessing and transporting child pornography because the evidence did not establish he knew the images were on his computer media. We disagree. Having considered the appellant's pretrial admissions, his testimony at trial, and the results of the forensic analysis performed on his computer, we find a reasonable factfinder could have found beyond a reasonable doubt the appellant knowingly

possessed and transported child pornography. We ourselves are also personally convinced of this.

*Challenge for Cause*

The appellant's trial defense counsel challenged Major (Maj) JH, a prospective court member, for cause under Rule for Courts-Martial (R.C.M.) 912. Maj JH was a nurse practitioner who had received training in 2012 as a Sexual Assault Nurse Examiner (SANE). Since that training, Maj JH's only involvement in any sexual assault case was to conduct an interview of an adult woman. In her role as a general nurse practitioner, Maj JH also, on a few occasions, took histories from patients who disclosed prior sexual abuse. In general voir dire, Maj JH initially stated that anyone who was guilty of offenses involving child pornography or "inducing a minor" must automatically be placed in confinement. But, upon further questioning, she agreed that she would consider all sentencing options, including no punishment, and would not make her sentencing decision until all evidence was admitted.

Trial defense counsel asserted Maj JH should be removed from the panel because her demeanor in court indicated she was overly empathetic towards sexual assault victims and her initial answer and "disposition" indicated she was inclined to start her sentencing deliberations with confinement rather than a "blank slate," notwithstanding her modification of that view under further questioning. Noting this case did not involve an *actual* victim, the military judge found Maj JH's SANE training to be unrelated to the case and that her demeanor was credible and forthcoming when she said she would consider all evidence prior to making a sentencing decision. Accordingly, he found no actual or implied bias and, while recognizing the mandate to liberally grant defense challenges to panel members, denied the challenge for cause. The defense then exercised its peremptory challenge on Maj JH, while also stating the defense would have used that challenge on another member if its challenge for cause had been granted as to Maj JH.

Prior to 2005, R.C.M. 912(f)(4) permitted appellate review of a denied challenge for cause even if the appellant successfully removed that panel member through use of a peremptory challenge, so long as trial defense counsel stated on the record that he would have exercised the defense's peremptory challenge against another member if the challenge for cause had been granted. *See United States v. Leonard*, 63 M.J. 398, 402–03 (C.A.A.F. 2006). In 2005, however, the President promulgated amendments to the *Manual* that significantly altered this rule. Now, "[w]hen a challenge for cause has been denied[,] the successful use of a peremptory challenge by either party, excusing the challenged member from further participation in the court-martial, *shall preclude further consideration of the challenge of that excused member upon later review*. R.C.M. 912(f)(4) (emphasis added). Under the current rule, because the appellant removed Maj JH from the panel through the use of his peremptory challenge, further review of the military judge's denial of the appellant's challenge for cause is precluded.

*Ineffective Assistance of Counsel*

The appellant contends he was denied his Sixth Amendment[3] right to effective assistance of counsel because his "civilian counsel slept during substantial portions of [the] court-martial." Through declarations submitted on appeal, the military and civilian trial defense counsel disagree about whether this occurred. Civilian defense counsel, Mr. PM, states he did not "sleep, doze, or otherwise fail to pay attention to any moment of the court-martial," while military defense counsel, Captain (Capt) TA, contends his co-counsel "fell asleep several times" during trial, requiring Capt TA to repeatedly kick him under the table to awaken him.

This issue first arose at trial during an Article 39(a), UCMJ, 10 U.S.C. § 839(a), session following discussion of proposed findings instructions. After the bailiff notified the military judge that someone had expressed a concern about Mr. PM sleeping during trial, the military judge told the parties that he had observed Mr. PM "at times . . . looks down [and] closes his eyes" and wanted to confirm with Mr. PM that he was awake and not having difficulty remaining awake. Mr. PM stated he closes his eyes when he is concentrating and was "always awake" in the courtroom. Military trial defense counsel then called a paralegal to testify about her observations of Mr. PM. She testified that she had seen Mr. PM close his eyes and that it appeared to her he was "nodding off every now and then." In response to a question from the military judge, the paralegal stated Capt TA was awake and "a hundred percent fully engaged" in the proceedings.

After denying defense counsel's request to call the bailiff to testify about his observations, the military judge stated he found Mr. PM to be credible and had not seen anything that would cause him to question Mr. PM's performance during the court-martial. In response to questioning by the military judge and after consultation with his counsel, the appellant stated that he was satisfied with the performance of both counsel, that they were motivated by his best interests, that their advice was in his best interest, and that he still wanted to be represented by them.

The following day, the members found the appellant guilty of all charges and imposed their sentence. A post-trial Article 39(a), UCMJ, session was held at the request of defense counsel after a panel member made a comment to the military judge while the military judge was thanking the panel for its service. This panel member believed Mr. PM had been sleeping during portions of the trial. The six panel members were collectively recalled into the courtroom and asked if they believed Mr. PM had been sleeping during trial. Four of the members answered affirmatively, but all four provided a negative response when asked if this interfered with their ability to function as fair and impartial court members.

---

[3] U.S. CONST. amend. VI.

Although the defense did not request further remedial action from the military judge and Mr. PM represented the appellant during the clemency stage of the trial, the appellant now argues we should set aside the findings and sentence in his case because Mr. PM's performance at trial was ineffective. We disagree.

The Sixth Amendment guarantees the accused the "right to the effective assistance of counsel." *United States v. Cronic*, 466 U.S. 648, 655–56 (1984). The Supreme Court "has concluded that the assistance of counsel is among those 'constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error.'" *Holloway v. Arkansas*, 435 U.S. 475 (1978) (quoting *Chapman v. California*, 386 U.S. 18, 23 (1967)). This Court reviews claims of ineffective assistance of counsel de novo. *United States v. Mazza*, 67 M.J. 470, 474 (C.A.A.F. 2009).

When reviewing such claims, we follow the two-part test outlined by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). *See United States v. Tippit*, 65 M.J. 69, 76 (C.A.A.F. 2007). Our superior court has applied this standard to military courts-martial, noting that "[i]n order to prevail on a claim of ineffective assistance of counsel, an appellant must demonstrate both (1) that his counsel's performance was deficient, and (2) that this deficiency resulted in prejudice." *United States v. Green*, 68 M.J. 360, 361 (C.A.A.F. 2010) (citing *Strickland*, 466 U.S. at 687; *Mazza*, 67 M.J. at 474).

"[T]he defense bears the burden of establishing the truth of the factual allegations that would provide the basis for finding deficient performance." *Tippit*, 65 M.J. at 76. When there is a factual dispute, appellate courts determine whether further fact-finding is required consistent with *United States v. Ginn*, 47 M.J. 236 (C.A.A.F. 1997). If, however, the facts alleged by the defense would not result in relief under *Strickland*, the Court may address the claim without the necessity of resolving the factual dispute. *See Ginn*, 47 M.J. at 248. Such is the case here.

We may begin our review by examining the prejudice prong, and conclude the review if we find none. *United States v. Datavs*, 71 M.J. 420, 424–25 (C.A.A.F. 2012) (citing *Strickland*, 466 U.S. at 697). To establish prejudice, the appellant must show "a reasonable probability exists that, but for counsel's [deficient performance], the result of the proceedings would have been different." *Strickland*, 466 U.S. at 694. Furthermore, "[w]here an accused is represented by both civilian counsel and detailed military counsel, the performance of defense counsel is measured by the combined efforts of the defense team as a whole." *United States v. Boone*, 42 M.J. 308, 311 (C.A.A.F. 1995). The appellant points to no evidence indicating that Mr. PM's alleged sleeping caused him to fail to take any particular action during the trial that he otherwise would have taken if he had been awake, or how the results of his proceeding would have been different if Mr. PM had been awake. Thus, the appellant has failed to meet his burden of demonstrating prejudice.

In some circumstances, however, a situation can be "so likely to prejudice" the appellant that prejudice can be presumed. *Cronic*, 466 U.S. at 658. In making this argument, the appellant specifically cites to *Javor v. United States*, 724 F.2d 831, 833–34 (9th Cir. 1984), where the Court of Appeals for the Ninth Circuit held that "when an attorney for a criminal defendant sleeps through a substantial portion of the trial, such conduct is inherently prejudicial and thus no separate showing of prejudice is necessary" because "unconscious or sleeping counsel is equivalent to no counsel at all." Several other circuits have followed this analysis. *See Muniz v. Smith*, 647 F.3d 619, 623 (6th Cir. 2011) (declining to find prejudice when counsel was only asleep for an undetermined amount of time during a single cross-examination); *Burdine v. Johnson*, 262 F.3d 336, 340–41 (5th Cir. 2001) (en banc) (concluding a defendant's right to counsel was violated where defense counsel was "repeatedly unconscious through not insubstantial portions of the defendant's capital murder trial"); *Tippins v. Walker*, 77 F.3d 682, 685 (2d Cir. 1996) (holding the defendant's right to counsel was violated where defense counsel was asleep for "numerous extended periods of time during which the defendant's interests were at stake").

Notably, all these cases have held the denial of counsel with presumed prejudice *only* occurs when the counsel sleeps through *a substantial portion* of the trial. Here, the appellant did not definitively establish his civilian trial defense counsel slept through any of his court-martial, let alone a substantial portion. Although multiple individuals believed Mr. PM was asleep at various portions during the trial, the record of trial demonstrates he was actively questioning witnesses and interacting with the military judge during the trial. Having considered the entire record, we do not find it possible that any sleeping by Mr. PM occurred during a substantial portion of the trial.

Furthermore, we have previously addressed allegations of sleeping or inattentive counsel and concluded that co-counsel's able representation likely mitigates an appellant's claim of ineffective assistance of counsel. *See United States v. Gerdes*, ACM S32091 (A.F. Ct. Crim. App. 14 November 2013) *rev. denied*, 73 M.J. 266 (C.A.A.F. 2014). We find such a rationale applies here. The appellant was capably represented by a fully awake and attentive military defense counsel during the entire trial. The appellant has not shown there is a reasonable probability there would have been a different result even if the allegations that Mr. PM was occasionally asleep are true.

*Sentencing Instruction on Sex Offender Registration*

Although he did not object at trial, the appellant now argues the military judge erred in instructing the panel that sex offender registration is a "collateral consequence [that] … should not be a part of your deliberations." We disagree.

In his written unsworn statement, the appellant stated:

I'll . . . very likely have to register as a sex offender. . . . [M]y ability to take care of [my wife and son] will be severely restricted with a punitive discharge, so I respectfully ask you to consider other forms of punishment since it will be difficult enough with the conviction and sex offender requirements.

Without objection from the defense, the military judge advised the panel:

The accused's unsworn statement included the accused's personal belief that he would be required to register as a sex offender. An unsworn statement is a proper means to bring information to your attention, and you must give it appropriate consideration. Your deliberations should focus on an appropriate sentence for the accused for the offenses of which the accused stands convicted. However, as a general evidentiary matter, evidence regarding possible registration as a sex offender, and the consequences thereof, would be characterized as a collateral consequence, and thus inadmissible outside of the context of an unsworn statement. This is so because,

(1) Your duty in sentencing is to adjudge an appropriate sentence for this accused, under these facts, in accordance with my instructions. Possible collateral consequences of the sentence, beyond those upon which you are instructed, other than mentioned above, should not be a part of your deliberations.

(2) Sex offender registration requirements may differ between jurisdictions such that registration requirements and the consequences thereof, are not necessarily predictable with any degree of accuracy.

(3) Whether or not the accused will or should be registered as a sex offender is not a decision before you.

In short, after due consideration of the unsworn statement and my prior instructions regarding the nature of the unsworn statement, the consideration and weight you give the reference is up to you in your sound discretion. Your duty is to adjudge an appropriate sentence for this accused in accordance with these instructions.

ACM 38255

The appellant now contends the military judge's instruction was erroneous because the "onerous burden[]" of registration should not be a "collateral consequence" outside of the sentencing authority's consideration.

We review a military judge's sentencing instruction for an abuse of discretion. *United States v. Barrier*, 61 M.J. 482, 485 (C.A.A.F. 2005). Failing to object to sentencing instructions before the members begin to deliberate waives appellate review absent plain error. R.C.M. 1005(f); *United States v. Blough*, 57 M.J. 528, 534 (A.F. Ct. Crim. App. 2002).

Since the filing of the parties' briefs in this case, our superior court has issued an opinion which requires rejection of the appellant's argument. In *United States v. Talkington*, 73 M.J. 212, 213 (C.A.A.F. 2014), our superior court held that sex offender registration is a collateral consequence of the conviction alone and has no causal relationship to the sentence imposed for the offense. Thus, while an accused is permitted to raise this collateral consequence in his unsworn statement, "the military judge may instruct the members essentially to disregard the collateral consequence" as they deliberate on an appropriate sentence for an accused. *Id.; see also Barrier*, 61 M.J. at 485–86; *United States v. Tschip*, 58 M.J. 275, 277 (C.A.A.F. 2003). In light of this holding, the military judge's instruction was neither plain error nor an abuse of discretion and was in accordance with the holding in *Talkington*.

*Improper Sentencing Argument*

Pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), the appellant argues trial counsel made an improper sentencing argument by arguing (1) the law prohibits individuals from inducing minors to engage in sexual conduct in order to prevent their "innocence from being stolen" and referenced the sexual abuse suffered by the appellant's wife; (2) a sentence of 18 years of confinement "will ensure no child currently alive will have to ever be concerned about being paid unwanted attention by" the appellant; (3) the appellant had learned how to avoid detection in the future by reviewing the investigation against himself; and (4) there will be nothing left in the appellant's life to deter him from engaging in this conduct again.

Improper argument involves a question of law that this Court reviews de novo. *United States v. Marsh*, 70 M.J. 101, 104 (C.A.A.F. 2011). If trial defense counsel failed to object to the argument at trial, we review for plain error. *Id.*; *United States v. Burton*, 67 M.J. 150, 152 (C.A.A.F. 2009). To establish plain error, the appellant must prove: "(1) there was an error; (2) it was plain or obvious; and (3) the error materially prejudiced a substantial right." *Marsh*, 70 M.J. at 104 (citation and internal quotation marks omitted).

Trial counsel is expected to zealously argue for an appropriate sentence, so long as the argument is fair and reasonably based on the evidence. *United States v. Kropf*, 39 M.J. 107, 108 (C.M.A. 1994) (citations omitted). Error occurs when counsel fail to limit their arguments to "the evidence of record, as well as all reasonable inferences fairly derived from such evidence." *United States v. Baer*, 53 M.J. 235, 237 (C.A.A.F. 2000) (citing *United States v. Nelson*, 1 M.J. 235, 239 (C.M.A. 1975)). However, it is error for trial counsel to make arguments that "unduly . . . inflame the passions or prejudices of the court members." *Marsh*, 70 M.J. at 102 (citations and internal quotation marks omitted); *see also* R.C.M. 919(b), Discussion.

Assuming arguendo there was plain error, the appellant still has the burden of demonstrating a material prejudice to his substantial rights. Assessing prejudice "involves a balancing of three factors: (1) the severity of the misconduct, (2) the measures adopted to cure the misconduct, and (3) the weight of the evidence supporting the conviction." *United States v. Fletcher*, 62 M.J. 175, 184 (C.A.A.F. 2005), *cited in United States v. Frey*, 73 M.J. 245, 249 (C.A.A.F. 2014). In doing so, we consider whether "trial counsel's comments, taken as a whole, 'were so damaging that we cannot be confident that [the appellant] was sentenced on the basis of the evidence alone.'" *Frey*, 73 M.J. at 249 (alteration in the original) (quoting *United States v. Halpin*, 71 M.J. 477, 480 (C.A.A.F. 2013)).

Even if trial counsel's comments were improper, we are confident the appellant was sentenced on the basis of the evidence alone. The weight of the evidence in this case "amply supports the sentence imposed by the panel." *Halpin*, 71 M.J. at 480. Furthermore, the appellant faced a maximum sentence of a dishonorable discharge, confinement of 44 years, and reduction to E-1, but was only sentenced to 30 months confinement and reduction to E-4. Accordingly, we find no prejudice to the appellant's rights in this regard.

*Conclusion*

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of the appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c); *United States v. Reed*, 54 M.J. 37, 41 (C.A.A.F. 2000).

Accordingly, the approved findings and sentence are

AFFIRMED.

FOR THE COURT

LEAH M. CALAHAN
Deputy Clerk of the Court

ACM 38255