UNITED STATES, Appellee

v.

Michael A. BARRIER, Senior Airman
U.S. Air Force, Appellant

No. 04-0540

Crim. App. No. S30160


United States Court of Appeals for the Armed Forces

Argued January 25, 2005

Decided September 26, 2005

BAKER, J., delivered the opinion of the Court, in which GIERKE, C.J.,
and EFFRON, J., joined.  CRAWFORD and ERDMANN, JJ., each filed a
separate opinion concurring in the result.



Counsel


For Appellant: Major Karen L. Hecker (argued); Colonel Carlos L.
McDade, Major Terry L. McElyea, and Major James M. Winner (on
brief).

For Appellee: Major John C. Johnson (argued); Lieutenant Colonel
Gary F. Spencer, Lieutenant Colonel Robert V. Combs, and Major
James K. Floyd (on brief); Colonel LeEllen Coacher.

Military Judge:  John J. Powers



**THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION**

Judge BAKER delivered the opinion of the Court.

A special court-martial composed of officer members convicted Appellant, pursuant to his pleas, of two specifications of drug use in violation of Article 112a, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 912a (2000). He was sentenced to a bad-conduct discharge, confinement for six months, forfeiture of $737 pay per month for six months, and reduction to pay grade E-1. The convening authority approved the sentence as adjudged, and the United States Air Force Court of Criminal Appeals affirmed.

We granted review of the following issue:

> WHETHER THE MILITARY JUDGE ERRED TO THE SUBSTANTIAL
> PREJUDICE OF THE APPELLANT WHEN, OVER DEFENSE
> OBJECTION, HE GAVE THE "FRIEDMANN" INSTRUCTION.

For the reasons articulated below, we affirm the decision of the lower court.

BACKGROUND

During the sentencing hearing of his court-martial, Appellant elected to give an unsworn statement to the members in which he stated:

> When deciding whether your sentence should include some
> amount of confinement, I know that each case has to be
> decided on its own merits. But I also believe that
> similar cases should receive similar punishments. Such
> as last year, Senior Airman Watson from Tyndall was
> charged with using ecstasy and the confinement portion
> of his sentence was only three months.

To rebut Appellant's statement, trial counsel presented the court-martial order relevant to Senior Airman (SrA) Watson's case indicating that Watson had received a bad-conduct discharge, four months of confinement, forfeitures, and reduction to E-1.

Over the objection of defense counsel, the military judge also informed the parties that he was going to issue a Friedmann instruction.[1]  He then instructed the members as follows:

> Now, during the accused's unsworn statement, he alluded to a case of another individual who the accused had stated had received a certain degree of punishment. In rebuttal, the trial counsel offered you Prosecution Exhibit 6, which was the court-martial order from that case which stated what that individual got in that case.
>
> The reason I mention this is for the following reason, and that is because, in fact, the disposition of other cases is irrelevant for your consideration in adjudging an appropriate sentence for this accused. You did not know all the facts of those other cases, or other cases in which sentences were handed down, nor anything about those accused in those cases, and it is not your function to consider those matters at this trial. Likewise, it is not your position to second guess the disposition of other cases, or even try to place the accused's case in its proper place on the spectrum of some hypothetical scale of justice.

---

[1]  In United States v. Friedmann, 53 M.J. 800 (A.F. Ct. Crim. App. 2000), the accused informed the members in his unsworn statement that two of the four airmen who pled guilty to drug use with him received nonjudicial punishment and administrative discharges.  He then asked the members to allow his commander to administratively discharge him in lieu of adjudging a punitive discharge. In response, the military judge instructed the members to disregard the possibility that the accused might be administratively discharged along with the sentences given to others in related cases.  The Court of Criminal Appeals affirmed under a plain error analysis.

Even if you knew all the facts about other offenses and offenders, that would not enable you to determine whether the accused should be punished more harshly or more leniently because the facts are different and because the disposition authority in those other cases cannot be presumed to have any greater skill than you in determining an appropriate punishment.

If there is to be meaningful comparison of the accused's case to those of other [sic] similarly situated, it would come by consideration of the convening authority at the time that he acts on the adjudged sentence in this case. The convening authority can ameliorate a harsh sentence to bring it in line with appropriate sentences in other similar cases, but he cannot increase a light sentence to bring it in line with similar cases. In any event, such action is within the sole discretion of the convening authority.

You, of course, should not rely on this in determining what is an appropriate punishment for this accused for the offenses of which he stands convicted. If the sentence that you impose in this case is appropriate for the accused and his offenses, it is none of your concern as to whether any other accused was appropriately punished for his offenses.

You have the independent responsibility to determine an appropriate sentence, and you may not adjudge an excessive sentence in reliance upon mitigation action by higher authority.[2]

---

[2] Although not the focus of his appeal, Appellant also argues that the judge's instruction "was dangerously misleading because the military judge's reference to the convening authority ameliorating any harsh sentence essentially relieved the court members of their independent responsibility to determine an appropriate sentence." An instruction may not suggest that members may consider the possibility of convening authority action in determining an accused's sentence. See Rule for Courts-Martial (R.C.M.) 1005(e)(4). In this case, however, the Appellant initiated the discussion of sentence comparison in his unsworn statement by asking the members to consider the sentence adjudged in another case when determining his sentence. The military judge was responding to Appellant's request and placing it in context. If a military judge has not limited an accused's unsworn statement that invokes sentence comparison, a military judge may instruct the members that in the military justice system: (1) the members are required to adjudge a sentence based upon their evaluation of the evidence without regard to the disposition

Appellant argues, as he did before the Court of Criminal Appeals, that the military judge's instruction interfered with his right of allocution, which this Court stated is "largely unfettered" and has been "broadly construed."  United States v. Grill, 48 M.J. 131, 133 (C.A.A.F. 1998).

DISCUSSION

During sentencing proceedings, an accused has a right to "testify, make an unsworn statement, or both in extenuation, in mitigation or to rebut matters presented by the prosecution." R.C.M. 1001(c)(2)(A).  An unsworn statement may be oral, written, or both.  R.C.M. 1001(c)(2)(C).  It may be presented to the court by the accused or by counsel at the direction of the accused. Id.  The unsworn statement is not subject to cross-examination; however, it is subject to rebuttal, comment during the Government's closing argument, and it may be tempered by appropriate instructions from the military judge.  Id.; Grill, 48 M.J. at 133.  Thus, while "the scope of an unsworn statement may include matters that are otherwise inadmissible under the rules

---

of other cases; (2) to the extent that the system provides for sentence comparison, that function is not part of the members' deliberations; it is a power assigned to the convening authority and Court of Criminal Appeals; and (3) in the course of determining an appropriate punishment, the panel may not rely upon the possibility of sentence reduction by the convening authority or the Court of Criminal Appeals.  The military judge in this case provided an instruction that covered these points.  In the future, it would be preferable for military judges not to use terms such as "harsh" or "light" so as to avoid any implication that the panel might rely on the convening authority's action.

of evidence, the right to make an unsworn statement is not wholly unconstrained." United States v. Tschip, 58 M.J. 275, 276 (C.A.A.F. 2003); United States v. Jeffery, 48 M.J. 229, 230 (C.A.A.F. 1998). An accused, for example, may not use the unsworn statement as a vehicle to show disrespect or a defiance of authority. United States v. Rosato, 32 M.J. 93, 96 (C.M.A. 1991). Appellant now tests the apparent tension between the rationale of Rosato and Grill, and this Court's stated view in United States v. Mamaluy, 10 C.M.A. 102, 106, 27 C.M.R. 176, 180 (1959), that "sentences in other cases cannot be given to court-martial members for comparative purposes."

In Grill, the Government asked the military judge to bar the accused from referencing in his unsworn statement the sentences received by the accused's civilian coconspirators in civilian court. The Government argued that the civilian sentences were irrelevant to the accused's sentencing at court-martial. Grill wanted to advise the members that some of his fellow weightlifters, who were civilians, received lenient or no punishment for their use of steroids.[3] Moreover, their cases

---

[3] In particular, Grill wanted to include the following language in his unsworn statement:

There have been two additional factors which have made waiting during the last year even more difficult. One is knowing that my friends, the men who are weight lifters just like me and who were equally involved with steroids, have received such favorable treatment while I am being treated

were adjudicated rapidly, whereas he had suffered the stress of lengthy adjudication. The military judge agreed with the Government, and concluded that the material was "'clearly inappropriate to present to members' and was objectionable as irrelevant and confusing under Mil. R. Evid. 402 and 403 . . . ." Grill, 48 M.J. at 133.

This Court reversed and stated that "an accused's right to allocution in the form of an unsworn statement, while not wholly unconstrained, has been broadly construed for decades." Id. The Court emphasized that in most cases the military judge's instructions could serve to place the unsworn statement in context:

> [W]e have confidence that properly instructed court-martial panels can place unsworn statements in the proper context, as they have done for decades. . . . Such instructions, as well as trial counsel's opportunity for rebuttal and closing argument, normally will suffice to provide an appropriate focus for the member's attention on sentencing.

---

so harshly. It is my understanding that one of them . . . , who was in the United States on a visa, was simply asked to leave and that no charges were brought against him. Another of my friends . . . was charged months ago, plead [sic] guilty, just like I have, and received only probation. Then he was allowed to move to Korea even though he was convicted and on probation. Finally, it is my understanding that no charges have ever been brought against [the third civilian conspirator], and may never be brought against him.

The fact that everyone else received such lenient treatment, and that [the first two friends] have had their cases over and done with, while I am still waiting after so much time, makes this entire situation really hard for me.

Grill, 48 M.J. at 132-33.

Id. This would include "any concern of the military judge with muddying the sentencing waters" by having the accused include with his unsworn statement "matters that were not admissible in evidence on sentencing." Id. at 132 (citing Rosato, 32 M.J. at 96; United States v. Breese, 11 M.J. 17 (C.M.A. 1981)). With this predicate, the Court concluded "the right to make a statement in allocution is not wholly unfettered, but if there are abuses, they should be addressed in the context of the statements made in specific cases." Grill, 48 M.J. at 133.

The issue presented in this case is whether Appellant's proposed statement regarding the sentence of another accused in an unrelated case was relevant to the issue of Appellant's sentencing, and if not, whether Appellant nonetheless was entitled to introduce the information without instruction by the military judge that the information was irrelevant. Appellant argues that the instruction effectively nullified his right of allocution. The Government argues that by placing Appellant's statement in proper context, the military judge was doing no more than that required by Grill.

We review a military judge's decision to give a sentencing instruction for an abuse of discretion. United States v. Hopkins, 56 M.J. 393, 395 (C.A.A.F. 2002)(citing United States v. Greaves, 46 M.J. 133 (C.A.A.F. 1997)). "The military judge has

8

considerable discretion in tailoring instructions to the evidence and law." Hopkins, 56 M.J. at 395.

As described above, Appellant called the members' attention to the sentence awarded to SrA Watson at Tyndall Air Force Base. Appellant did not assert that Watson's case was closely related to his own. The military judge permitted trial counsel to rebut Appellant's statement concerning Watson's sentence, and instructed the member as quoted above.

The judge's instruction accurately states the law. "[I]t has long been the rule of law that the sentences in other cases cannot be given to court-martial members for comparative purposes." Mamaluy, 10 C.M.A. at 106, 27 C.M.R. at 180. This rule seeks to keep courts-martial from becoming engrossed in collateral issues and recognizes the UCMJ's emphasis on individualized consideration of punishment. "[P]roper punishment should be determined on the basis of the nature and seriousness of the offense and the character of the offender, not on many variables not susceptible of proof." 10 C.M.A. at 107, 27 C.M.A. at 181. Therefore, the instruction in this case appropriately stated that the information was irrelevant. Appellant's statement brought the sentence from another case to the attention of the members for comparative purposes. Case law precludes such comparison. Thus, we conclude that the military judge acted

9

within his discretion in instructing the members that the comparative sentencing information offered by Appellant was irrelevant.

In reaching this conclusion, we are cognizant of Appellant's argument that the military judge's instruction effectively nullified this portion of his statement. Because the information in question was not otherwise relevant as mitigation, extenuation, or rebuttal, it was beyond the scope of R.C.M. 1001, and the military judge could correctly advise the members that the comparative sentencing information was irrelevant.

In different circumstances, a military judge might appropriately preclude the introduction of information that in context is outside the scope of R.C.M. 1001, if the military judge determines that an instruction would not suffice to place the statement in proper context for the members. For example, were an accused to offer a comparative review of sentences in the Air Force generally, a military judge would have to consider whether an instruction could adequately place the information "in proper context" and whether the Government was entitled to rebut the information with a study of its own, with all the incumbent risks of the mini-trial.

In summary, the right to allocution is broad, and largely unfettered, but it is not without limits. Grill should not be

read to suggest otherwise. Appellant presented comparative sentencing information, which was not relevant as extenuation, mitigation, or rebuttal. The military judge put the information "in proper context" by effectively advising the members to ignore it. While the military judge's instruction emphasized that this portion of Appellant's statement was irrelevant, the instruction was consistent with Grill's general preference for contextual instruction rather than outright preclusion. However, each case will present different facts, different arguments regarding the relevance of sentencing statements under R.C.M. 1001(c)(2), and a differing risk of confusion, distraction, and error. A military judge exercising his or her discretion, for example, might treat the comparative cases of coconspirators differently than the sentences of drug offenders generally, choosing to instruct or preclude given the specific statement at issue and depending on the context in which it is presented.

## DECISION

We hold that the military judge did not err when he instructed the members regarding Appellant's unsworn statement. The instruction given enabled the members to place Appellant's statement in the appropriate perspective. The decision of the United States Air Force Court of Criminal Appeals is affirmed.

11

United States v. Barrier, No. 04-0540/AF

CRAWFORD, Judge (concurring in the result):

I write separately to mourn our missed opportunity to clarify, modify, or overrule this Court's opinion in United States v. Grill, 48 M.J. 131 (C.A.A.F. 1998). Instead, this Court again leaves counsel and military judges in Alice's position:

> "It seems very pretty," she said when she had finished it, "but it's rather hard to understand!" (You see she didn't like to confess, even to herself, that she couldn't make it out at all.) "Somehow it seems to fill my head with ideas -- only I don't know exactly what they are!" [1]

As if describing the theory that parallel lines eventually meet in space, the majority posits that somewhere, some material exists that, when offered in an unsworn statement, a military judge, bearing in mind "Grill's general preference for contextual instruction rather than outright preclusion," may preclude consideration of information on the basis that it "in context is outside the scope of R.C.M. 1001." 61 M.J. __ (10-11).

Grill was certainly not such a case and, apparently, neither is Appellant's. And so the great dance continues. Grill recognizes a nearly unfettered right to introduce matters, such as sentence comparisons in an unsworn statement, and today's lead opinion reassures military judges that they should

---

[1] Lewis Carroll, Through the Looking Glass and What Alice Found There 24 (William Morris & Co., Inc. 1993)(1872) (Alice's observation after using the looking glass to read "Jabberwocky.").

follow Grill and "place unsworn statements in proper context" by telling the members that the sentence comparisons are irrelevant and should be excluded from their sentencing considerations.

In the end, this practice probably does more to detract from an accused's credibility and the effectiveness of his presentencing case than if the President were to eliminate the unsworn statement altogether. Because military judges dare not exclude such matters, when an accused and his counsel weave the thread of sentence comparison (or other, as yet undetermined matters) through the accused's unsworn statement, the last thing court members will hear before they begin their sentence deliberations is the military judge telling them that much of what the Appellant asked them to consider was baloney.

Until we revisit Grill, return the unsworn statement to a form more consistent with law and history, and reassure military judges that they may exercise reasonable control over the sentencing case, the carousel will continue to operate.

United States v. Barrier, No. 04-0540/AF

ERDMANN, Judge (concurring in the result):

I agree with the majority disposition of this case. I write separately, however, to express my view that United States v. Grill, 48 M.J. 131 (C.A.A.F. 1998), creates an irreconcilable tension between the scope of pre-sentencing unsworn statements and the military judge's obligation to provide proper instructions. That tension is obvious in this case: what the currently defined right to allocution through a pre-sentencing unsworn statement under Grill permits, the military judge takes away in a Friedmann instruction.[1]

This tension finds its origin in United States v. Rosato, 32 M.J. 93 (C.M.A. 1991) where this court stated that the scope of unsworn statements is "generally considered unrestricted." Id. at 96. The treatises relied

---

[1] See United States v. Friedmann, 53 M.J. 800 (A.F. Ct. Crim. App. 2000). Awkward results have been spawned by Grill. See United States v. Tschip, 58 M.J. 275 (C.A.A.F. 2003)(instruction giving members discretion to disregard the accused's statement that if he did not get a punitive discharge he could still be administratively discharged); Friedmann (instruction to members that possible administrative discharge and disposition of other cases, both of which the accused mentioned in his pre-sentencing unsworn statement, should not be considered); United States v. Macias, 53 M.J. 728 (A. Ct. Crim. App. 1999)(finding error in preventing an unsworn statement from including information that accused would have to register as a sex offender, but suggesting that the military judge could have instructed that requirement to register as a sex offender was a collateral consequence of the conviction).

United States v. Barrier, No. 04-0540/AF

upon in Rosato for the assertion that an unsworn statement
is virtually unlimited must be considered in context.  It
is premised upon a right to make an unsworn statement that
is distinctly different than the right currently
established as part of military pre-sentencing procedure in
the Manual for Courts-Martial, United States (2002 ed.)
(2002 MCM).

   The unsworn statement recognized in trials by courts-
martial prior to implementation of the Uniform Code of
Military Justice (UCMJ) in the 1951 Manual for Courts-
Martial[2] was a pre-findings statement, as contrasted with
the current pre-sentencing statement.  The accused was
permitted to make a statement "in the nature of an
argument" which "by custom of the service" could also
contain "allegations of fact, some of which may not have
been presented to the court in the form of evidence during
the course of the trial."[3]  As Colonel Winthrop notes in his
treatise on military law, an accused was granted "very
considerable freedom" before findings because "under the
critical circumstances in which he is placed, [the accused]

---

[2] Manual for Courts-Martial, United States (1951 ed.) (1951
MCM).
[3] George B. Davis, A Treatise on the Military Law of the
United States 132-33 (3d ed. revised 1913).

2

should certainly be allowed the largest latitude of expression."[4]

The 1928 Manual[5] established a pre-sentence procedure that did not provide for an unsworn statement or argument by counsel.[6]  Under the 1928 MCM, the right to make an unsworn statement was provided only prior to findings, and was permitted "in denial, explanation, or extenuation of the offenses charged."[7]  At that time the unsworn statement played a key role in the actual defense against charges.[8]

Pursuant to the authority granted by Article 36(a), UCMJ, 10 U.S.C. § 836(a) (2000), the President adopted revised pre-sentencing procedures in the 1951 MCM.  Those procedures included the right of an accused to make "an unsworn statement to the court in extenuation or mitigation

---

[4] William Winthrop, Military Law and Precedents 299 (2d ed. 1920 reprint).

[5] A Manual for Courts-Martial, U.S. Army (1928 ed.) (1928 MCM).

[6] Id. at paras. 79-81.  See also A Manual for Courts-Martial, U.S. Army (1928 ed. corrected to April 20, 1943) paras. 79-81; Manual for Courts-Martial, U.S. Army (1949 ed.), paras. 79-81.

[7] 1928 MCM, para. 76.  See also Navy Courts and Boards (1937 ed., reprinted 1945, including changes 1 and 2) § 419; Manual for Courts-Martial, U.S. Air Force (1949 ed.), para. 76.

[8] See United States v. Britt, 44 M.J. 731, 731-32 (A.F. Ct. Crim. App. 1996), aff'd, 48 M.J. 233 (C.A.A.F. 1998) (noting that the unsworn statement evolved from a time when an accused was not a competent witness and most accuseds were unrepresented.  In such cases, the unsworn statement was a key part of an accused's defense to the charges).

United States v. Barrier, No. 04-0540/AF

of the offenses of which he stands convicted."[9]  The 1969

Manual[10] contained the same authority for an accused to make

an unsworn statement "in mitigation or extenuation."[11]  The

right was expanded in the 1984 Manual's[12] Rules for Courts

Martial (R.C.M.) to include an "unsworn statement . . . in

extenuation, in mitigation, or to rebut matters presented

by the prosecution, or for all three purposes."[13]   The

accused's right to make an unsworn statement exists in that

same form in the current version of the MCM.[14]

Although the historical underpinnings of the "unsworn

statement" prior to the 1951 MCM are relevant to the scope

of that "pre-findings" unsworn statement, they do not

support the conclusion that the "pre-sentence" unsworn

statements are broader than as defined by the President.

The right to make an unsworn statement on sentencing does

not conflict with or diminish any constitutional or

statutory right and should be enforced and interpreted as

created by the President, i.e., to include matters in

---

[9] 1951 MCM, para. 75c (2).
[10] Manual for Courts-Martial, United States (1969 revised ed.) (1969 MCM).
[11] 1969 MCM, para. 75c(2).
[12] Manual for Courts-Martial, United States (1984 ed.) (1984 MCM).
[13] R.C.M. 1001(c)(2)(A).
[14] R.C.M. 1001(c)(2)(A), Manual for Courts-Martial, United States (2002 ed.).

4

extenuation, mitigation and rebuttal.[15]  These terms are well-defined and known in military practice but are not so broad as to be unrestricted.[16]

While I recognize that the majority opinion is following this court's prior precedent in Grill and that the viability of Grill was not challenged in this case, I believe it is time to reconsider that precedent.  In relying on the flawed premise that a pre-sentence unsworn statement is "unrestricted," Grill engenders a procedure that unnecessarily complicates military justice proceedings.  The military judge and counsel must sit by while the accused articulates information that is not in extenuation, mitigation or rebuttal.  The military judge then instructs the members to ignore those portions of the unsworn statement.  The result is unnecessary confusion and distraction that benefits neither the accused nor the Government.

The scope of unsworn statements is defined by R.C.M. 1001 and the content is limited to extenuation, mitigation and rebuttal.  There is no right for an unsworn statement to exceed that definitional scope.  Where an accused seeks

---

[15] Although the rules of evidence "may" be relaxed (R.C.M. 1001(c)(3)), the limitations on unsworn statements are not rules of evidence but rather are rules of procedure promulgated by the President.
[16] See R.C.M. 1001(c)(1).

to make a pre-sentencing unsworn statement containing material that does not mitigate, extenuate, or rebut, the military judge should exclude that information as irrelevant to proper sentencing consideration.  Such action not only preserves the accused's rights as conferred by the Manual, it also prevents confusion, distraction and waste of time.