# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

## UNITED STATES

**v.**

## Cadet ANTHONY D. DANIELS, JR.
### United States Air Force

## ACM 38371

## 14 October 2014

Sentence adjudged 8 March 2013 by GCM convened at the United States Air Force Academy, Colorado. Military Judge: Grant L. Kratz.

Approved sentence: Dismissal and confinement for 8 months.

Appellate Counsel for the Appellant: Captain Isaac C. Kennen and Captain Lauren A. Shure.

Appellate Counsel for the United States: Lieutenant Colonel C. Taylor Smith; Captain Matthew J. Neil; and Gerald R. Bruce, Esquire.

Before

SANTORO, WEBER, and CONTOVEROS
Appellate Military Judges

This opinion is subject to editorial correction before final release.

PER CURIAM:

A general court-martial composed of officer members convicted the appellant, contrary to his pleas, of one specification of attempted forcible sodomy of Cadet HS and one specification of wrongful sexual contact against Cadet TL, in violation of Articles 80 and 120, UCMJ, 10 U.S.C. §§ 880, 920.[1] The adjudged and approved sentence was a dismissal and confinement for 8 months.

---

[1] The appellant was acquitted of committing forcible sodomy against Cadet TL alleged as a violation of Article 125, UCMJ, 10 U.S.C. § 925. The conviction of wrongful sexual contact followed his acquittal on the greater charged offense of aggravated sexual contact, also alleged as violation of Article 120, UCMJ, 10 U.S.C. § 920.

Before us, the appellant argues that (1) Military Rule of Evidence 413 is unconstitutional as applied in this case and violates due process, (2) the military judge erred by failing to require the members to follow proper procedures for reconsideration of a finding, and (3) the military judge erred by prohibiting the attachment of an article on sex offender registration to the appellant's unsworn statement. We disagree and affirm.

*Background*

Cadet HS and the appellant were cadet candidates at the United States Air Force Academy Preparatory School ("Prep School") in 2009. They met each other through Facebook at the Prep School and both later became cadets at the United States Air Force Academy.

While at Prep School, around the beginning of September 2009, the appellant asked Cadet HS in a Facebook chat if she wanted to meet him outside after "Taps." Uncomfortable with that request, she instead suggested they meet in one of the Prep School buildings to study together. The appellant agreed, and they met in the Leadership Room (configured as a lounge/study area) in the Academic Building. They studied together and talked for approximately an hour. There was no sexual or romantic aspect to the discussion or interaction.

The appellant then got up, said he would be back, and left the room. Upon his return, he began to pack his belongings. Cadet HS did the same, thinking their study session was over. The appellant told her to wait. He shut the door to the room, turned out the lights, took her backpack from her, and tried to kiss her. She stopped him and said no. The appellant took hold of Cadet HS and pulled her behind a bookshelf, which made them difficult to see from the doorway. She continued to protest and unsuccessfully attempted to pull away. Over her protests, the appellant exposed his penis, pulled her head toward it several times, and tried to push her to her knees. Suddenly the door to the room opened. Nobody entered and the door swung shut, but that interruption caused the appellant to freeze and enabled Cadet HS to end the encounter and leave.

Cadet TL and the appellant met in the summer of 2011 and twice engaged in consensual fellatio. Cadet TL told the appellant that the second encounter would be their last. In November 2011, the appellant sent Cadet TL a text message asking to talk to her. She assumed he was seeking another sexual encounter so she declined to meet. Later that day, they unexpectedly crossed paths in the library and again in Fairchild Hall. Cadet TL ignored the appellant's gesture to follow him into Fairchild Hall and instead returned to her squadron.

Shortly thereafter, the appellant sent a text message to Cadet TL telling her that she was a bad friend for not speaking with him when he needed someone. Now thinking

that the appellant really did want to talk, Cadet TL asked him where he wanted to meet. At or shortly after midnight, the appellant texted Cadet TL and asked her to meet him in a room across from a training office. She met him there.

When Cadet TL entered the room, the lights were off and the curtains partially drawn. The appellant was sitting at the end of a table near the rear of the room. He got up and locked the door after Cadet TL entered the room. They spoke briefly about recent events and family, but during a lull in the conversation Cadet TL asked the appellant what he wanted to talk about. He said he did not really know. She prepared to leave and gave him a hug—but the appellant would not let her break the hug. He kissed her. She pulled away. He kissed her again, more forcefully, pressing her against a table.

Cadet TL tried to get away from the appellant, but he caught up to her and put one hand under her shirt and bra and held her buttocks with the other. As she continued to resist verbally and physically, the appellant moved her around the room and pressed her against various pieces of furniture. Eventually he put his hands down her pants and inserted his fingers into her vagina.

The following day, Cadet TL's roommate observed bruises on both sides of Cadet TL's neck. She described them as similar to hand marks, as though someone had choked Cadet TL. Cadet TL told several of her friends about the incident.

As the allegations circulated among the cadets, Cadets TL and HS met and told each other what had happened to them. They both then gave statements to investigators.

*Military Rule of Evidence 413*

The appellant launches a two-pronged attack on Mil. R. Evid. 413: he argues that it is unconstitutional as applied in this case because the military judge erred in instructing the members that they could consider propensity evidence, and also that it violates due process by allowing guilty findings based on evidence that does not meet the beyond-a-reasonable-doubt standard.

The constitutionality of a statute and the question of whether members were properly instructed are both reviewed de novo. *United States v. Wright*, 53 M.J. 476, 478 (C.A.A.F. 2000); *United States v. Schroder*, 65 M.J. 49, 54 (C.A.A.F. 2007). When an appellant first challenges the constitutionality of a statute as applied on appeal, the matter is generally considered to be forfeited and reviewed under a plain error standard. *United States v. Goings*, 72 M.J. 202, 205 (C.A.A.F. 2013). Upon plain error review, to prove that Mil. R. Evid. 413 is unconstitutional as applied to him, the appellant "must point to particular facts in the record that plainly demonstrate why his interests should overcome Congress' and the President's determinations that his conduct be proscribed."

*Id.* (citing *United States v. Vazquez*, 72 M.J. 13, 16–21 (C.A.A.F. 2013); *United States v. Ali*, 71 M.J. 256, 266 (C.A.A.F. 2012)).

A rule of evidence is presumed constitutional unless lack of constitutionality is clearly and unmistakably shown. *Wright*, 53 M.J. at 481 (citing *National Endowment for the Arts v. Finley*, 524 U.S. 569, 580 (1998)). An appellant overcomes the presumption of constitutionality by showing that the challenged rule of evidence "'offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" *Id.* (quoting *Montana v. Egelhoff*, 518 U.S. 37, 43–45 (1996)).

The appellant argues that Mil. R. Evid. 413 is unconstitutional as applied to this case because the military judge improperly instructed the court members on the use of propensity evidence and thereby "sanctioned the bootstrapping of verdicts." At trial, the military judge followed the Department of the Army Pamphlet 27–9, *Military Judges' Benchbook* [hereinafter "*Benchbook*"], model instruction regarding Mil. R. Evid. 413 to instruct that:

> Each offense must stand on its own and you must keep the evidence of each offense separate. . . . The burden of proof is on the Prosecution to prove each and every element of each offense beyond a reasonable doubt. Proof of one offense carries with it no inference that the accused is guilty of any other offense.
>
> Further, evidence that the accused committed the sexual assault alleged in one specification may have no bearing on your deliberations in relation to the other specifications unless you first determined by a preponderance of the evidence, that is, more likely than not, the offense alleged in one of the specifications occurred. If you determined by a preponderance of the evidence that an offense alleged in one specification occurred, even if you are not convinced beyond a reasonable doubt that the accused is guilty of that offense, you may nonetheless then consider the evidence of that offense for its bearing on any matter to which it is relevant in relation to the other charged offenses. You may also consider the evidence of such other acts of sexual assault for its tendency, if any, to show the accused's propensity or predisposition to engage in sexual assault.
>
> You may not, however, convict the accused solely because you believe he committed any other offense or solely because you believe the accused has a propensity or predisposition to

engage in sexual assault. *In other words, you cannot use this evidence to overcome a failure of proof and [sic] the government's case, if you perceive any to exist.*

(emphasis added).

The appellant frames his challenge to the constitutionality of the rule as an "as applied" challenge based on the instructions the military judge provided. However, the military judge's instructions merely reflected the rule's permission to use evidence of commission of one sexual assault offense to prove propensity to engage in other such offenses. Therefore, the appellant's challenge actually appears to be aimed at the rule itself, rather than how the military judge instructed the rule be used in this case. Our superior court has already determined the rule is constitutional both on its face and as applied, and the appellant raises no new concern our superior court has not already addressed. *See United States v. Wright*, 53 M.J. 476 (C.A.A.F. 2000); *Untied States v. Dewrell*, 55 M.J. 131 (C.A.A.F 2001); United *States v. Schroder*, 65 M.J. 49 (C.A.A.F. 2007).

Even assuming the appellant's challenge is properly framed as an "as applied" challenge, we find Mil. R. Evid. 413, as applied in this case, to be constitutional. In following the *Benchbook's* model instruction, the members were appropriately advised on the proper use of propensity evidence and that such evidence does not relieve the Government of its burden to prove each and every element of every charged offense. These instructions are consistent with our superior court's guidance in a similar context. *See Schroder*, 65 M.J. at 56 (holding such instructions are warranted in the case of Mil. R. Evid. 414 propensity evidence). The appellant has failed to show "why his interests should overcome Congress' and the President's determinations that his conduct be proscribed." *See United States v. Goings*, 72 M.J. 202, 205 (C.A.A.F. 2013). As our superior court held, admission of evidence under Mil. R. Evid. 413 is not so extremely unfair as to violate fundamental conceptions of justice. *Wright*, 53 M.J. at 481. The military judge's instruction was a correct statement of the law and left the burden of proof upon the prosecution. While complex, the instruction was accurate, and the members are presumed to have followed the military judge's instruction. *See United States v. Holt*, 33 M.J. 400, 408 (C.M.A. 1991). We therefore reject this assignment of error.

*Reconsideration*

When the members returned to announce their findings, the military judge examined the findings worksheet and noted that it was "almost in proper form." This exchange followed between the military judge and the panel president:

MJ: Colonel [H], with respect to the lesser included offense, if that option were selected, then all of the words in [that] paragraph would need to be read.

PRES: I believe I understand what you're saying, but—

MJ: There's a—there's one thing crossed out that should not be crossed out.

PRES: Oh. I got you. I got you. It was—we had literally changed on that as we came out.

The president made an adjustment to the worksheet and returned it to the military judge. Following another review of the worksheet, the panel president announced the findings of the court.

The findings worksheet offered the following option for a finding of guilty of the lesser included offense (LIO) of wrongful sexual contact:

Of the Specification of Charge II and of Charge II, NOT GUILTY but GUILTY of the named lesser included offense of Wrongful Sexual Contact in violation of Article 120.

The original findings worksheet has the word GUILTY circled and what appears to be an erased line through the words "NOT GUILTY" in the option for the LIO.

The appellant asserts that the panel president's comment that the members had "literally changed on that" as they came out suggested that the members had reconsidered a previous vote without asking the military judge for instructions on the procedure for reconsideration.[2] We disagree.

We review de novo the military judge's instructions. *United States v. Maynulet*, 68 M.J. 374, 376 (C.A.A.F. 2010). Where there is no objection to an instruction at trial, we review for plain error. *United States v. Tunstall*, 72 M.J. 191, 193 (C.A.A.F. 2013). If we find instructional error, because there are constitutional dimensions at play, we must determine whether the error was harmless beyond a reasonable doubt. *United States v. Medina*, 69 M.J. 462, 465 (C.A.A.F. 2011). As this issue is raised for the first time on appeal, we apply a plain error analysis.

---

[2] In his instructions prior to deliberation, the military judge told the members that they could reconsider any finding before it was announced in open court, and that if any member wished to do so, the military judge would give appropriate additional instructions.

There are several reasonable interpretations of the president's comment. The most likely—especially when considering the condition of the original findings worksheet—is that the president made an administrative error when he mistakenly lined through the words "NOT GUILTY" in the option for a finding of guilty of the LIO. His comment that they "changed on that" could mean nothing more than the members were debating whether those words were supposed to remain in the announcement of a finding of guilty of the LIO.

Another possible interpretation of the president's comment is that the members had been going back and forth on their findings until the final moments of deliberations and voting. Such a back-and-forth could permissibly have occurred verbally or through a straw poll. *See United States v. Lawson*, 16 M.J. 38, 41 (C.M.A. 1983).

The third interpretation is the one suggested by the appellant: that the members had voted, that their vote had resulted in a finding of not guilty of the LIO, a member proposed reconsideration, and the revote led to a finding of guilty.

Despite our view that the first interpretation—that the lining through of the words was an administrative error—is the most likely, we need not reach that conclusion to resolve this assignment of error. The only way to determine conclusively which interpretation was correct would be to question the court members, a procedure specifically forbidden by Mil. R. Evid. 606(b) unless the issue is one of introduction of extraneous prejudicial information, improper outside influence, or unlawful command influence. The appellant does not allege any of these occurred. Therefore, the president's statement neither requires nor permits further inquiry. *See United States v. Brooks*, 42 M.J. 484, 486–87 (C.A.A.F. 1995). We find no error, plain or otherwise, and reject this assignment of error.

*Attachment of Sex Offender Registration Article to Unsworn Statement*

The appellant alleges that the military judge improperly prevented him from including information about sex offender registration in his unsworn statement during sentencing proceedings. The appellant attempted to attach to his written unsworn statement a 15-page document entitled, "Collateral consequences of sex offender residence restrictions," which was published in *Criminal Justice Studies*. Jill S. Levinson, *Collateral consequences of sex offender residence restrictions*, 21:2 CRIM. JUST. STUD. 153–66 (2008). The article purports to analyze the "impact of residence restrictions on sex offenders in Broward County, Florida."[3]

---

[3] There is nothing in the record to indicate that the Oklahoma-born and reared appellant ever had, or planned, any connection to or residence in Florida.

The Government objected to the inclusion of this article in the unsworn statement. Trial defense counsel acknowledged that the article was not written by the appellant and that the appellant's written unsworn statement would not reference the article but rather discuss generally the difficulties he might face as a sex offender.

Acknowledging that an accused can say things in his unsworn statement that may not otherwise be admissible, the military judge nonetheless excluded the article and noted that evidence of sex offender registry would not be before the members because it is a collateral matter. We review this ruling for an abuse of discretion. *United States v. Freeman*, 65 M.J. 451, 453 (C.A.A.F. 2008). An accused's right to make an unsworn statement, "while not wholly unconstrained, has been broadly construed." *United States v. Grill*, 48 M.J. 131, 133 (C.A.A.F. 1998). A military judge may preclude information in an unsworn statement that, in context, is outside the scope of R.C.M. 1001's contours for permissible sentencing evidence if the military judge determines that an instruction would not suffice to place the statement in proper context. *United States v. Barrier*, 61 M.J. 482, 486 (C.A.A.F. 2005).

The requirement to register as a sex offender is a collateral consequence of a conviction and therefore would not be admissible as evidence at sentencing. *United States v. Talkington*, 73 M.J. 212, 216 (C.A.A.F. 2014). However, an accused may reference sex offender registration in his unsworn statement. *Id*. at 217.

The military judge did not preclude the appellant from commenting on sex offender registration requirements. In fact, the appellant specifically brought sex offender registration to the attention of the members in his written statement: "There are going to be many challenges ahead, due to having a federal conviction and registration as a sex offender. After rehabilitation, I am determined to become a productive member of society again, and I know that getting jobs will require me to disclose that I have been convicted."

We conclude that the military judge did not abuse his discretion in excluding a statement, not written by the appellant that contained otherwise-inadmissible information about a collateral consequence of a court-martial conviction. The military judge could lawfully have instructed the members they could disregard the article even had it been before them. *See Barrier*, 61 M.J. at 486 ("The military judge put the information [offered in the accused's unsworn statement regarding sentences in other cases] 'in proper context' by effectively advising the members to ignore it."); *see also United States v. Tschip*, 58 M.J. 275, 277 (C.A.A.F. 2003). Therefore, even if the military judge erred, we conclude that any such error was harmless.

*Conclusion*

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of the appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings and the sentence are **AFFIRMED**.

FOR THE COURT

STEVEN LUCAS
Clerk of the Court