# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM S32607 (f rev)**

————————————

**UNITED STATES**
*Appellee*

**v.**

**Aaron L. GREEN**
Airman First Class (E-3), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

*Upon Further Review*

Decided 13 May 2021

————————————

*Military Judge:* Mark F. Rosenow; Andrew R. Norton (remand).

*Sentence:* Sentence adjudged on 30 May 2019 by SpCM convened at Joint Base Lewis-McChord, Washington. Sentence entered by military judge on 9 July 2019 and reentered on 2 February 2021: Bad-conduct discharge, confinement for 10 months, forfeiture of $1,120.00 pay per month for 10 months, reduction to E-1, and a reprimand.

*For Appellant:* Major Amanda E. Dermady, USAF.

*For Appellee:* Major Peter F. Kellett, USAF; Mary Ellen Payne, Esquire.

Before MINK, KEY, and ANNEXSTAD, *Appellate Military Judges*.

Judge KEY delivered the opinion of the court, in which Senior Judge MINK and Judge ANNEXSTAD joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

————————————

KEY, Judge:

A military judge sitting as a special court-martial convicted Appellant, in accordance with his pleas and pursuant to a pretrial agreement, of three specifications of indecent exposure in violation of Article 120c, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 920c.[1,2] The military judge sentenced Appellant to a bad-conduct discharge, confinement for ten months, forfeiture of $1,120.00 pay per month for ten months, reduction to the grade of E-1, and a reprimand.[3]

On appeal, Appellant raised three issues: (1) whether trial counsel made an improper sentencing argument by arguing information taken from victim impact statements; (2) whether the record of trial is incomplete due to it not including certain documents: written pretrial legal advice, a written submission from one of the victims, and the convening authority's Decision on Action memorandum; and (3) whether Appellant was denied the opportunity to respond to matters submitted to the convening authority by one of the victims during the case's post-trial processing.[4] We consider the second and third assignments of error together, as the matters in the third assignment are among the documents Appellant alleges are missing from the record of trial in his second assignment.

In our initial review of this case, this court determined the convening authority had failed to take action on the sentence as required by Executive Order 13,825, § 6(b), 83 Fed. Reg. 9889, 9890 (8 Mar. 2018), and Article 60, UCMJ, 10 U.S.C. § 860 (*Manual for Courts-Martial, United States* (2016 ed.) (2016 *MCM*)). As a result, this court remanded Appellant's case to the Chief Trial Judge, Air Force Trial Judiciary, for correction. *See United States v. Green*, No. ACM S32607, 2021 CCA LEXIS 6, at *7–8 (A.F. Ct. Crim. App. 8 Jan. 2021)

---

[1] All references in this opinion to punitive articles of the Uniform Code of Military Justice (UCMJ) are to the *Manual for Courts-Martial, United States* (2016 ed.). Unless otherwise noted, all other references to the UCMJ, as well as references to the Rules for Courts-Martial (R.C.M.), are to the *Manual for Courts-Martial, United States* (2019 ed.) (2019 *MCM*).

[2] Pursuant to the terms of the pretrial agreement, the convening authority withdrew and dismissed with prejudice three specifications of indecent conduct in violation of Article 134, UCMJ, 10 U.S.C. § 934.

[3] We note that two of the three specifications of which Appellant was convicted are stated in identical terms. Appellant explained unequivocally at trial that he understood Specification 1 of Charge I pertained to one victim while Specification 2 pertained to a second victim, despite the fact neither victim is specifically identified in the specifications.

[4] We have reordered and reframed Appellant's assignments of error.

(unpub. op.). In correcting this error, the successor convening authority—who had assumed command during the pendency of Appellant's appeal—executed a new Decision on Action memorandum taking action on Appellant's sentence by approving the adjudged sentence in its entirety. The military judge modified the entry of judgment, and both the new Decision on Action memorandum and the corrected entry of judgment have been added to Appellant's record of trial. Now considering Appellant's assignments of error, we find no error prejudicial to Appellant's substantial rights, and we affirm.

## I. BACKGROUND

On 24 August 2018, Appellant—20 years old at the time—was driving his car in a shopping area parking lot when he pulled up alongside Ms. LE who was walking towards her own parked car. Appellant asked Ms. LE where a particular store was, and while she was giving him directions, she saw that Appellant's penis was out of his pants and in his left hand. Ms. LE went to her car and called the police. This pattern repeated itself that same day in the same shopping area with another woman, Ms. AG, who called her aunt crying before calling the police. Ms. LE's and Ms. AG's calls to law enforcement were separated by just over ten minutes. Three weeks later, this same sequence of events played out with a third woman, Ms. LR, in the same parking lot. Like the two women before her, Ms. LR called the police, and Appellant was identified as the perpetrator. Charges were preferred in March 2019, and an Article 32, UCMJ, preliminary hearing was held the following month. 10 U.S.C. § 832. The preliminary hearing officer recommended the charges be referred to a special court-martial, and the convening authority followed that recommendation.

## II. DISCUSSION

### A. Government Sentencing Argument

Appellant asserts that even though trial defense counsel did not object to trial counsel's sentencing argument, the military judge erred by permitting trial counsel to argue information from Ms. LE's and Ms. AG's unsworn victim impact statements. Appellant's theory is those statements are not evidence, and they therefore may not be argued by either trial or defense counsel during sentencing proceedings.

#### 1. Additional Background

At Appellant's court-martial in May 2019, Ms. LE submitted a written unsworn statement which she also read aloud to the military judge in court. In this statement, Ms. LE recounted the events in the parking lot, explaining that when Appellant first engaged her, she purposely kept her distance from him because she was "thinking something was wrong." When she saw Appellant's

military haircut, she "told [herself] that [she] was being paranoid, that he was clearly military, probably new to the area, might not have a cell phone, and convinced [her]self [she] was, in fact, safe." She then walked over to Appellant's car and saw him exposing himself.[5] She also told the military judge how she drove back to the shopping area a week later to go to a fast-food restaurant. As she was parking, she saw a male in a military uniform walk into the restaurant, leading Ms. LE "to panic that it could be [Appellant]." She waited in the parking lot for half an hour for the man to emerge so that she could reassure herself he was not Appellant. Over the following months, Ms. LE began having nightmares about Appellant, and she realized that seeing men with military haircuts like Appellant's would trigger her anxiety after her heart "began to race" when she saw a man in an airport with a military backpack and a "high-and-tight haircut."

Ms. AG also provided the court with a written unsworn statement. She wrote that her encounter with Appellant left her "traumatized, embarrassed, and [made her feel] really stupid" and that it had impacted her mental health. She said over a month passed before she could go a day without thinking about the incident, and she said it led her to "second guess the integrity of those who serve" in the military.

During his brief sentencing argument, assistant trial counsel argued without objection:

> Ms. [AG], in her unsworn statement writes that she's now second guessing the integrity of those who serve. [Ms. LE] avoided going into [the restaurant] because there was a military member in [the restaurant]. She went from overriding her instincts, because she thought that [Appellant] was in the military, overriding her instincts to having anxiety attacks when she sees somebody with a military backpack and a military haircut.

At another point in his argument, assistant trial counsel said—again without objection—

> [Ms. LE] is clearly deeply affected by what [Appellant] did. She has changed her behavior in multiple facets of her life. She still feels anxiety and stress over what happened. . . . And finally, Ms. [AG], a 17-year old girl.[6] She cried at the time of the crime. She

---

[5] Trial defense counsel objected to Ms. LE describing the events in the parking lot as improper victim-impact matters, but the military judge overruled the objection.

[6] Ms. AG was 18 years old by the time of trial.

cried for days afterwards. It took her over a month not to think about it, and she said it was affecting her mental health.

### 2. Law

A crime victim has the right to be reasonably heard during sentencing proceedings. Article 6b(a)(4)(B), UCMJ, 10 U.S.C. § 806b(a)(4)(B); R.C.M. 1001(c)(1). This right may be exercised in a non-capital case via a sworn or unsworn statement, or both. R.C.M. 1001(c)(2)(D)(ii). A victim's unsworn statement is not subject to cross-examination and may be presented orally, in writing, or both. R.C.M. 1001(c)(5)(A). "[V]ictim impact includes any financial, social, psychological, or medical impact on the crime victim directly relating to or arising from the offense of which the accused has been found guilty." R.C.M. 1001(c)(2)(B). The contents of victim impact statements are limited to victim impact and matters in mitigation. R.C.M. 1001(c)(3).

We review claims of improper argument de novo; when no objection is made at trial, the error is forfeited, and we review for plain error. *United States v. Voorhees*, 79 M.J. 5, 9 (C.A.A.F. 2019) (citation omitted). Under the plain error standard, such error occurs "when (1) there is error, (2) the error is plain or obvious, and (3) the error results in material prejudice to a substantial right of the accused." *United States v. Fletcher*, 62 M.J. 175, 179 (C.A.A.F. 2005) (citation omitted). With respect to sentencing arguments, we must be confident an appellant "was sentenced on the basis of the evidence alone." *United States v. Frey*, 73 M.J. 245, 248 (C.A.A.F. 2014) (quoting *United States v. Halpin*, 71 M.J. 477, 480 (C.A.A.F. 2013)).

### 3. Analysis

Appellant's alleged error raises the question of the precise nature of an unsworn victim impact statement—that is, whether the statement is evidence and, if not, whether government counsel may refer to matters raised in it during sentencing arguments. Unsworn victim impact statements, such as those involved here, are a relatively recent addition to the military justice system. *See, e.g.*, *United States v. Barker*, 77 M.J. 377, 378 (C.A.A.F. 2018). As with unsworn statements offered by an accused during presentencing proceedings, we have held that unsworn victim impact statements are likewise not evidence. *United States v. Hamilton*, 77 M.J. 579, 583 (A.F. Ct. Crim. App. 2017), *aff'd on other grounds*, 78 M.J. 335 (C.A.A.F. 2019). Our superior court, the United States Court of Appeals for the Armed Forces (CAAF), has recently arrived at the same conclusion, finding victim unsworn statements to both fall outside the military rules of evidence and be analogous to an accused's unsworn statement. *United States v. Tyler*, __ M.J. __, 2021 CAAF LEXIS 396, at *7 (C.A.A.F. 26 Apr. 2021).

The CAAF "has consistently cautioned counsel to limit arguments on findings or sentencing to evidence in the record and to such fair inferences as may be drawn there from." *United States v. Paxton*, 64 M.J. 484, 492 (C.A.A.F. 2007) (quoting *United States v. White*, 36 M.J. 306, 208 (C.M.A. 1993)). Unsworn statements offered by an accused during presentencing proceedings are not evidence. *United States v. Provost*, 32 M.J. 98, 99 (C.M.A. 1991). Nonetheless, they are permissible means to introduce information before a court-martial, even when that information would not be otherwise admissible under the Military Rules of Evidence. *See United States v. Grill*, 48 M.J. 131, 133 (C.A.A.F. 1998). Unsworn statements, however, are "not wholly unconstrained." *Id.* In addition to being subject to military judges' limiting instructions, trial counsel may rebut matters raised in an accused's unsworn statement as well as comment on those same matters during the Government's sentencing argument. *United States v. Barrier*, 61 M.J. 482, 484 (C.A.A.F. 2005) (citations omitted).

The right of a victim to be heard before a court-martial flows from both Article 6b, UCMJ, and R.C.M. 1001(c), rendering the victim's impact statement, even when unsworn, an authorized means to bring information to the court's attention, just as is the case with an accused's unsworn statement.[7] While Appellant recognizes victims' rights to give such statements, he argues the statements may not be commented upon by the parties. His rationale is that—like an accused's unsworn statement—unsworn victim impact statements are not subject to discovery or evidentiary rules, nor can victims be cross-examined regarding the statements' contents, therefore trial counsel should not be able to use matters contained therein to argue for an appropriate sentence. The CAAF, however, has squarely rejected Appellant's ultimate conclusion by holding that counsel may comment on and even argue matters contained in a victim's unsworn statement, just as is the case with an accused's unsworn. *Tyler*, 2021 CAAF LEXIS 396, at *12 n.4. Specifically, the CAAF held R.C.M. 1001(g) permits counsel to argue for an appropriate sentence based upon the introduction of related matters, and such matters include victims' unsworn statements. *Id.* at *10–11.

Context, of course, is key. While counsel may comment on matters in an unsworn statement, they may not attempt to mislead the court-martial by suggesting that those matters amount to or carry the same weight as admitted evidence. Here, trial counsel did not attempt to overstate the weight to be given to the matters in the unsworn statements and instead noted for the military judge that the comments included in his argument were things Ms. AG had written and Ms. LE had said. Moreover, some of the comments cited by trial

---

[7] Prior to the 2019 *MCM*, provisions related to a victim's right to be heard were found in R.C.M. 1001A.

counsel (such as that Ms. AG cried after Appellant exposed himself to her) were stipulated to by the parties and, as such, were admitted evidence in the case. Overall, trial counsel's argument regarding the unsworn victim impact statements was brief and consisted of him restating matters from the unsworn statements without analysis or commentary, leaving us unconvinced trial counsel committed error, much less plain error, in this regard.

## B. Claims of Record of Trial Deficiencies

Appellant asserts he never received a copy of a purported post-trial submission by Ms. LE to the convening authority, thereby depriving Appellant of his opportunity to respond to it. In addition, he claims three documents are missing from the record of trial, rendering it incomplete: Ms. LE's post-trial submission, the staff judge advocate's pretrial advice, and the convening authority's Decision on Action memorandum.

### 1. Additional Background

On 5 June 2019, six days after the conclusion of Appellant's court-martial, Ms. LE signed for her receipt of a memorandum from trial counsel that explained Ms. LE's right to submit a written statement to the convening authority before the convening authority decided what action to take on Appellant's case. The memorandum gave Ms. LE the opportunity to select one of two options: "I am submitting the attached statement" or "I do not intend to submit a statement." Ms. LE elected the latter option and signed the memorandum. Beneath her signature is an area for the staff judge advocate to sign, indicating whether or not Ms. LE provided a statement. The staff judge advocate's signature block is lined out however, and another judge advocate's name—Major (Maj) JR—is written above it, identifying him as the "acting staff judge advocate." In this section of the memorandum, the words "did not provide a statement" are crossed out, and the words "provided a statement" are circled. The convening authority executed a Decision on Action memorandum on 26 June 2019, wherein he noted, "I considered matters timely submitted by the accused under R.C.M. 1106 and the victims under R.C.M. 1106A."

After Appellant filed his assignments of error with this court, we granted the Government's motion to attach several items addressing the documents Appellant alleges are missing from the record of trial. Appellant did not object to the Government's motion. These items include: (1) a certificate of receipt showing Appellant's appellate counsel was served a copy of the original convening authority's Decision on Action memorandum on 16 October 2019, about three weeks after Appellant's assignments of error were filed; (2) a memorandum from the convening authority explaining he did not receive any post-trial submissions from any of the victims in the case, and statements to the contrary in his Decision on Action memorandum amounted to "a clerical error;" (3) a

declaration from the staff judge advocate stating he neither saw nor heard any discussion regarding any post-trial submission from Ms. LE, that he believed Ms. LE never filed a post-trial submission, and that he believed Maj JR's annotation that she had submitted one was a "clerical error;" and (4) a declaration from Maj JR stating his belief that his circling of the words "provided a statement" was a mistake on his part, as he never reviewed any statement from Ms. LE nor recalled any discussion in the office regarding such a statement.

Once we remanded this case, the successor convening authority accomplished a new Decision on Action memorandum, dated 29 January 2021, in which she states she considered matters submitted by Appellant, but makes no reference to any post-trial matters submitted by the victims in this case.

The only statement from Ms. LE found in the record of trial is the written statement she provided during Appellant's court-martial. There is no indication in the record that either Ms. AG or Ms. LR submitted any post-trial matters to the convening authority.

### 2. Analysis

#### *a. Ms. LE's Post-Trial Submission*

Under R.C.M. 1106A(a), a victim may submit matters to the convening authority for that authority's consideration in deciding whether to take action on the findings or sentence of a court-martial. Any such matters must be provided to the accused "as soon as practicable." R.C.M. 1106A(c)(3). Once an accused receives those matters, he or she has five days to submit any matters in rebuttal. R.C.M. 1106(d)(3). Matters submitted by a victim under R.C.M. 1106A are to be attached to the record of trial. R.C.M. 1112(f)(3). Similarly, any written waiver of a victim of his or her right to submit matters under R.C.M. 1106A shall be attached to the record. *Id.*

In this case, there is no post-trial statement from Ms. LE included in the record of trial. Instead, the record includes the memorandum Ms. LE received, upon which she indicated she did not intend to submit a statement for the convening authority's consideration. This same memorandum includes Maj JR's signature and his contradictory assertion that Ms. LE did provide a statement for the convening authority's consideration. Post-trial declarations from Maj JR and the staff judge advocate state Maj JR's assertion that Ms. LE had provided a statement was merely a "clerical error," and a memorandum from the original convening authority says he never reviewed any post-trial statement from Ms. LE, in spite of his Decision on Action memorandum which states he considered matters submitted by "the victims."

We may consider post-trial affidavits when necessary to resolve "issues raised by materials in the record." *United States v. Jessie*, 79 M.J. 437, 445 (C.A.A.F. 2020). Unsworn declarations have the same "force and effect" as an

affidavit when the declarant signs under penalty of perjury. 28 U.S.C. § 1746. The convening authority's memorandum, however, was not submitted in the form of an affidavit or unsworn declaration, and therefore does not comply with Rule 23(b) of the Joint Rules for Appellate Procedure for Courts of Criminal Appeals (permitting parties to submit statements for consideration, but only if they are either affidavits or unsworn declarations under penalty of perjury). JT. CT. CRIM. APP. R. 23(B). As such, we do not consider the convening authority's memorandum in our analysis. Even omitting this memorandum, however, we are not convinced Ms. LE ever submitted post-trial matters, much less that the Government both failed to serve such matters on Appellant and failed to attach them to the record of trial.

Significantly, Ms. LE herself marked on the letter that she did not intend to submit matters. Although Maj JR circled the words "provided a statement" on the same memorandum, his post-trial declaration indicates he neither reviewed any such statement nor recalled any discussion within the legal office indicating Ms. LE submitted a statement. The staff judge advocate's declaration reflects the same. The first convening authority did indicate he reviewed "matters timely submitted by the accused under R.C.M. 1106 and the victims under R.C.M. 1106A," but this wording suggests the latter clause was erroneously included as language from a template form, as the wording refers to the plural "victims," when there is no indication in the record that any victim other than Ms. LE may have submitted post-trial matters. We also find significant the fact that neither the record nor the submissions to this court provide any indication Ms. LE actually desired or intended to submit post-trial matters to the convening authority, as well as the fact that the successor convening authority's Decision on Action memorandum does not reflect the existence or consideration of any R.C.M. 1106A victim impact statements. On balance, we are persuaded that the wording, "and the victims under R.C.M. 1106A," in the original convening authority's Decision on Action memorandum was erroneously included, and Maj JR circled the wrong option on the memorandum he signed. Thus, we conclude Appellant has not demonstrated a post-trial submission from Ms. LE to the convening authority exists, in spite of erroneous annotations to the contrary by the convening authority and Maj JR. While these errors evidence a lack of attention to detail, and they have unnecessarily raised concerns about the validity of the post-trial processing of Appellant's case, they do not establish either that Appellant was denied access to any post-trial matters submitted by a victim in this case or that such matters were excluded from his record of trial.

### b. Pretrial Advice

Under Article 34(b), UCMJ, 10 U.S.C. § 834(b), convening authorities must consult with a judge advocate "on relevant legal issues" before referring

charges and specifications to a special court-martial for trial.[8] R.C.M. 406A explains the consultations—referred to as "pretrial advice"—may cover such issues as jurisdiction, the form and viability of the charges, probable cause supporting the belief the accused committed the charged offenses, and "[a]ny other factors relating to disposition of the charges and specifications in the interest of justice and discipline." Court reporters are directed to attach such written pretrial advice—"if any"—to the record before forwarding the record for appellate review. R.C.M. 1112(f)(1)(B). Appellant argues that because no written pretrial advice was included in his record of trial, he has no way of knowing whether the convening authority ever obtained pretrial advice as required by Article 34(b), UCMJ. As a remedy, Appellant asks this court to order the Government to add the written pretrial advice to the record of trial, or—in the event no such written advice exists—to direct the Government to create a memorandum stating pretrial advice was given, but never reduced to writing. We decline to grant either as relief.

Whether a record of trial is complete is a question of law we review de novo. *United States v. Henry*, 53 M.J. 108, 110 (C.A.A.F. 2000). By the terms of Article 34, UCMJ, no written pretrial advice is required for charges referred to a special court-martial, as is the case here. Appellant has not asserted such written advice was actually prepared. Instead, he explains he does not know if written advice exists at all. Thus, Appellant has not met his burden of demonstrating written pretrial advice is missing from the record—that is, that the record is deficient by being incomplete. We know of no requirement for the Government to inform an accused that an oral pretrial consultation occurred between the convening authority and a judge advocate when the substance of the consultation is not reduced to writing, and Appellant has not identified any legal authority compelling us to impose such a requirement. Appellant's alleged error is without merit.

### c. Decision on Action Memorandum

The convening authority's Decision on Action memorandum was included in the record of trial docketed with this court, but was apparently erroneously omitted from Appellant's copy of the record. According to post-trial submissions by the Government, this omission was corrected after Appellant filed his assignments of error. Moreover, we returned this record due to the fact the Decision on Action memorandum did not fulfill the requirements of Article 60, UCMJ (2016 *MCM*). The successor convening authority accomplished a new

---

[8] In the case of a general court-martial, the convening authority must obtain the advice of the staff judge advocate in writing. Article 34(a), UCMJ, 10 U.S.C. § 834(a).

Decision on Action memorandum which has been appended to Appellant's record of trial, and any error regarding the omission of the original memorandum is therefore moot.

## III. CONCLUSION

The findings and sentence entered are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d). Accordingly, the findings and sentence are **AFFIRMED**.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court